REX WARREN, LEE THOMPSON, AND FRANK (RED) MOORE v. THE STATE.

No. 18426. Delivered November 12, 1936.

304

The opinion states the case.

*Reynolds & Heare* and *Homer L. Moss,* all of Shamrock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for two years.

The appellants were jointly tried and convicted, and the same penalty was assessed against each of them.

The appellant, Frank Moore, was driving an automobile upon the public highway in which his companions, Rex Warren and Lee Thompson, and a woman were also riding. Their car collided with that operated by Edward Johnson and in which Finis Bumpers was riding. Bumpers and the young woman were killed in the collision.

The controverted question was whether Moore was intoxicated at the time of the collision. After the collision some whisky was found near the wrecked cars. However, there was no testimony that at the time of the collision any whisky was possessed by the appellant Moore; and witnesses who were present stated that they observed nothing in his conduct at the time of the accident which would lead them to believe that he was intoxicated.

The court charged on the law of principals. As we have already observed, the appellant Moore was driving the car. It appears that he had borrowed it from one Miladin. As far as disclosed by the record, the appellants Warren and Thompson,

were guests in the car and had nothing to do with its operation. There is nothing to indicate that they were on a joint mission with the appellant Moore, nor that they had control over him in any way. Again, there is nothing to show that they were guilty of negligence themselves or that they did or said anything at the time to cause Moore to collide with the other car. Under the circumstances, the opinion is expressed that the negligence of Moore, if any, cannot be charged to them. It therefore follows that as to the appellants Warren and Thompson, the evidence is deemed insufficient to establish their principalship.

From the testimony of Mrs. Elizabeth Wingo, who was manager of a tourist camp, it appears that appellant and his companions occupied a cabin in the tourist camp during the night. After arranging for the cabin, appellant and his companions departed but later returned and occupied a cabin containing two beds. The lady who was with Rex Warren registered for the cabin under the name of "Mr. and Mrs. Charley Waters, of Childress, Texas." The witness testified:

"At both times that Warren came there I was close enough to him to smell his breath, and I did smell whisky on his breath. * * * Warren and the woman stayed that night in Cabin 16. * * * The next morning I saw Rex Warren and this same woman as they were coming out of the cabin. I also saw the defendants Thompson and Moore the next morning, I would judge, between seven-thirty and eight o'clock."

The witness testified that after the appellants had entered their cabin for the night she heard a loud and boisterous noise and swearing in the cabin. It appeared that the people therein were arguing. From the testimony of the witness we quote further:

"I have seen people come to my tourist camp out there that were under the influence of liquor, and have observed their action and conduct at such times. Based on such observation and experience, and from my observation of these defendants here, and the woman, that morning (they) were drunk to some extent, in my opinion. Of course, I do not know much about drunk people, but from the experience I have had, I would say they were under the influence of liquor."

After the appellants had departed, the witness found two empty whisky bottles in the cabin which they had occupied. They drove away about eight o'clock in the morning. Mrs. Wingo also testified that she occasionally found a whisky bottle or two when she cleaned up the cabins after they had been

occupied during the night. She said that before the cabin in question was occupied there were no whisky bottles in it.

Dr. J. W. Gooch was introduced as a witness in behalf of the State. He was a practicing physician and surgeon in Shamrock, Texas. Prior to the occurrence under consideration, Dr. Gooch had no acquaintance with or knowledge of the appellant, Frank Moore, but had occasion to see him on the 2nd day of October when he was brought to the hospital. Moore was brought to the hospital about 9:30 o'clock in the morning on a stretcher and was immediately taken to the operating room where an examination disclosed a broken arm, a cut on his jaw, some broken ribs and minor bruises on his body. Moore was partly unconscious at the time but he would answer questions and raise objections to what the doctors were doing. Dr. McCreary sutured the wound of the appellant. From Dr. Gooch's testimony we quote:

"We kept him on the table because we didn't want to stay around and hold him; he was just rowdy and fussy, caused by his being drunk. I could smell whisky on his breath, and he would swear and fuss at us while we were working on him. He talked intelligently, sobered up, you might say, about four o'clock in the afternoon, having been asleep in the meantime."

The doctor testified that he heard Frank Moore and one Maladin talking and heard one of them say: "We have got to pin it on the girl." On cross-examination, the doctor testified that Moore stayed in his hospital from 9:30 a. m., October 2nd, to 12:30 p. m., October 3rd.

From Bill of Exception No. 2, we take the following quotations:

"And defendant's counsel asked this question of the witness:

"Q. How much was the bill?

"To which objection the district attorney objected, and the objection was by the court sustained, and the defendant excepted to the ruling of the court.

"The defendant offered the testimony for the purpose of showing the bias or prejudice of the witness, J. W. Gooch, against the defendant Frank Moore, and then asked the following question:

"Q. Has this bill been paid?

"To which question the district attorney objected and the court sustained the objection, and the defendant excepted to the ruling of the court.

"The defendant expected to show by this testimony that the

hospital bill was substantially in the amount of $100.00; that the same has not been paid, and that the defendant Frank Moore had refused to pay the bill, and that the witness Gooch was biased or prejudiced against the defendant Moore, and offered such testimony before the jury for the purpose of passing upon the credibility of the witness, and for the purpose of showing the jury the animus of the witness toward the defendant Frank Moore; and to the refusal of the court to permit the defendant to develop such testimony by cross-examination the defendant, through his counsel, duly excepted."

The testimony of the appellant, Frank Moore, was in substance that he was thirty years of age at the time of the accident; that on the first day of October he left the town of Shamrock and went to Pampa in company with Rex Warren and a lady; that they stopped at a night club not far from Pampa and danced until late in the night; that after the dance they returned to Pampa. Warren and his lady friend stopped at McLean, but Moore returned to Pampa. He spent the night at Pampa at the South Side Rooms operated by Mrs. Pearl Taylor, as he had known Mrs. Taylor and her husband for several years. Moore denied having drunk any liquor before leaving Pampa, and saw no whisky or liquor prior to the accident. Moore was driving the car at the time of the collision. From his testimony we quote:

"I had not drunk one drop of whisky on that date."

Referring to the testimony of Doctor Gooch, we take the following quotations from Branch's Ann. Tex. P. C., p. 93, sec. 163:

"The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. The adverse party may prove declarations of a witness which tend to show bias, interest, prejudice, or any other mental state or status which fairly construed might tend to affect his credibility."

"The defendant is entitled to show animus and prejudice on the part of a State witness toward him, and its extent, and in such examination great latitude is allowed when the object is to impeach the credit of such witness."

The text is supported by the citation of many cases collated by Mr. Branch. See, also, Welburn v. State, 87 S. W. (2d) 259.

The same principle is found emphasized by many decisions of this court and others in Underhill on Criminal Evidence (3rd Ed.), p. 565, sec 30, from which the following is taken:

"He (accused) may show that the witnesses for the prosecu-

tion hated him and from his evidence the jury may infer that this hatred colored the testimony. The bias of the witness may be shown, either by independent testimony or by questions put to him upon his examination. He may be interrogated as to his sympathy with the prisoner, or as to his hostility towards him."

To debate the subject of the admissibility of facts which would affect a witness or influence him in shaping his testimony or conduct would be useless as it would tend to demonstrate that which is obvious. Upon this all text-writers agree. See Underhill on Criminal Evidence (3d. Ed.), p. 565, sec. 390; Wharton's Criminal Evidence (10th Ed.), Vol. 2, p. 767; Corpus Juris, Vol. 70, p. 937. See, also, Galvan v. State, 86 S. W. (2d) 228, especially page 235.

It is upon the word of Doctor Gooch that the State relies for proof that the appellant was drunk. In the absence of Doctor Gooch's testimony the State would have been without sufficient evidence to warrant the conclusion that Moore was drunk. In the light of the record, it is thought that the refusal to permit the appellant to elicit from the witness the testimony in question was not justified but impinged upon his right to have the jurors determine whether the witness entertained animus against him. No witness testified that Moore was drunk at the time of the collision. That he was in an intoxicated condition was proved as a matter of inference from other facts in evidence. Upon another trial, if the testimony is the same, the court should submit an instruction embracing the law of circumstantial evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*