465 So.2d 958 (1985)
STATE of Louisiana, Appellee,
v.
Blanchard HINES, Jr., Appellant.
No. 16915-KW.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Writ Denied April 19, 1985.
*959 Charles W. Seaman, Natchitoches, for appellant.
William J. Guste, Jr., Atty. Gen., New Orleans, James L. Davis, Dist. Atty., Many, for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
Defendant, Blanchard Hines, Jr. was charged by bill of information with taking game fish illegally, in violation of La.R.S. 56:320; possession of overlimit game fish, in violation of La.R.S. 56:325; reckless operation of a motorboat, in violation of La. R.S. 34:850.4; and resisting an officer, in violation of La.R.S. 14:108A. After a bench trial, the defendant was found guilty as charged on all four counts. After sentencing, the defendant applied for writs of certiorari, claiming the evidence was insufficient to sustain his conviction on all four charges. The Louisiana Supreme Court granted the writ and transferred it to this court for our consideration. 458 So.2d 470.

FACTS
On February 21, 1984 Ronald Morris, an officer with the Louisiana Department of Wildlife and Fisheries, together with James Clements and Rodney Arbuckle, deputies *960 with the DeSoto Parish Sheriff's Department, were traveling south on Toledo Bend Lake near the Red Fox Ditch, when they observed two men in a large aluminum boat going into the ditch on the Louisiana side. At that time, the officers were in route to an area where they knew illegal nets were located. Officer Morris, the driver of the patrol boat, intending to make a safety check, pulled behind the aluminum boat and turned on his blue signal light. He testified that when he turned on the light, the aluminum boat accelerated down the creek at a high rate of speed. The officers attempted to chase the boat. However, due to the large difference in horsepower of the two engines, they could not keep up with it. While chasing the boat, Officer Morris and Deputy Clements saw an individual, whom they later identified as Blanchard Hines, throw two garbage sacks out of the back of the boat. The officers testified that another man was in the front of the boat driving but they could not make an identification of that person because he never turned and looked towards the officers. The officers recovered the sacks, which were found to contain game fish. Additionally, around a curve in the lake in the path which the escaping boat took, the officers found two more bags of fish identical to the two which they had previously observed the defendant throwing out of the rear of the boat.
After some further investigation, Officer Morris obtained information that Hines had been one of the men in the boat, and obtained a warrant for his arrest.
At trial, both Officer Morris and Deputy Clements identified Hines as the individual they had seen throwing garbage bags of fish out of the boat. Officer Morris testified the garbage bags they recovered contained 33 striped bass, 4 white perch, and 11 blue channel catfish. He further testified that these fish had markings which indicated that they had been caught with a gill net, and that he could find no hook marks in the mouths of the fish. Photographs of the fish introduced into evidence in conjunction with Officer Morris' testimony clearly depicted the described markings. Also, both Officer Morris and Deputy Clements stated that the boat was being driven in an extremely fast and reckless manner as it made its escape.
The defense brought forward two witnesses, Jerry W. Brigman and his wife, Margie Brigman, who testified that Officer Morris' supervisor, Dalton Green, had told them that Officer Morris believed that one Bruce Rogers was the driver of the boat that ran away from him, but that he did not know who was the passenger. However, Officer Green, testifying for the defense, stated that he had told the Brigmans that Officer Morris knew Hines was in the boat but did not know who the driver was.
The defendant Hines took the stand and stated that he was not in the boat that Officer Morris and Deputy Clements had chased, but had been fishing alone in another part of the lake. He testified that he normally fished alone and that on this date he was not near the area where the incident took place. On cross examination, Hines admitted that he had been convicted twice earlier for game violations of the same type.
The trial court after hearing the evidence found the defendant guilty as charged for taking game fish illegally, possession of overlimit game fish and resisting an officer. The court took under advisement the charge of careless operation of a motorboat to consider the question of whether defendant was a principal in that offense. Later the court found Hines to be a principal and found him guilty as charged on that count also. Defendant was sentenced to pay a fine of $300 and 30 days in jail for taking game fish illegally, and $500 and 30 days in jail for possession of overlimit game fish (jail sentences to run consecutively); to a fine of $100 and 30 days in jail for resisting an officer, and $100 and 30 days in jail for careless operation of a motor boat (jail sentences to be concurrent but consecutive with the sentences for the game violations).
Defendant applied for writs claiming that the evidence was insufficient to sustain his convictions. The Supreme Court granted *961 the writs and the case was transferred to this court for its consideration.
Defendant alleges that after reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the defendant guilty beyond a reasonable doubt of the crimes charged.
Because the prosecution is required to prove beyond a reasonable doubt every element necessary to constitute the crime or crimes charged, a conviction based on the record devoid of any relevant evidence of a crucial element of the offense or offenses charged is constitutionally infirm. State v. Peoples, 383 So.2d 1006 (La.1980). In reviewing the sufficiency of the evidence to support a conviction, the reviewing court must determine whether after viewing the evidence in a light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime or crimes proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Byrd, 385 So.2d 248 (La.1980). This review is required by the due process clause of the Fourteenth Amendment to determine whether the evidence upon which a criminal conviction is based is minimally sufficient. State v. Graham, 422 So.2d 123 (La.1982).

OFFENSE #1: Taking Game Fish Illegally
Defendant argues that a review of the evidence presented to the court does not support a finding of guilty by a rational trier of fact of the offense of taking game fish illegally in violation of La.R.S. 56:320. That statute provides in pertinent part:
(1) Freshwater and saltwater game fish may be taken by means of rod, fishing pole, hook and line, trolling line, handline, bait casting, fly casting apparatus, by use of the device known as a yo-yo, bow and arrow, standard spearing equipment used by a skin diver sport fishing in salt water or fresh water when submerged in the water, and by no other means except a barbless spear used in salt water for taking flounder.
Hines asserts that no gill net was ever found or recovered. He claims that the testimony of Officer Morris and Deputy Clements, who stated that in their opinion the markings on the fish recovered were caused by a gill net, is insufficient to support the convictions, since those markings could have been caused by other means. However, despite this argument defendant presented no contradictory evidence at trial, and the photographs of the fish which were introduced clearly show the described markings. Also, Officer Morris testified that he found no hook marks in the fishes' mouths.
Under the Jackson v. Virginia standard, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational fact finder to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. As stated by the supreme court in State v. Captville, 448 So.2d 676 (La.1984), when a case involves circumstantial evidence, an evaluation of the reasonableness of another hypothesis of innocence, under La.R.S. 15:438, provides a helpful methodology for determining the existence of a reasonable doubt. However, the court stated that the appellate court does not determine whether another possible hypothesis has been suggested by the defendant which could explain the events in an exculpatory fashion. Rather the reviewing court evaluates the evidence in a light most favorable to the prosecution and determines whether the alternate hypothesis is sufficiently reasonable that a rational fact finder could not have found proof beyond a reasonable doubt. In the instant case, using the Jackson v. Virginia standard, considering the direct evidence and drawing reasonable inferences in favor of the state for the circumstantial evidence, we find there was sufficient evidence upon which a rational fact finder could find defendant guilty beyond a reasonable doubt of the crime charged. Accordingly defendant's *962 conviction for taking game fish illegally in violation of La.R.S. 56:320 is affirmed.

OFFENSE #2: Possession of Overlimit Gamefish
Defendant was also convicted of possession of overlimit game fish contrary to La.R.S. 56:325. Defendant claims the evidence is insufficient to sustain this conviction because the state did not present evidence that the fish were ever in possession of the defendant.
Our review of the record reflects that Officer Morris and Deputy Clements identified the defendant as the passenger in the boat which they pursued. They stated that they observed the defendant throwing two garbage bags of fish out of the boat. Further, the officers found two more identical bags of fish around a bend in the lake in the trail of the boat. Officer Morris stated that the bags contained 33 striped bass, 4 white perch and 11 blue channel catfish.
Under the terms of La. R.S. 56:325A(4) no person shall take in any one day no more than 5 striped bass. Therefore, the two persons in the boat could legally have taken no more than 10 striped bass. Using the Jackson v. Virginia test, the facts established by the direct evidence and inferred from the circumstantial evidence were sufficient for a rational fact finder to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of this crime in that defendant was in possession of these gamefish. Therefore, defendant's conviction for possession of overlimit game in violation of La.R.S. 56:325 is affirmed.

OFFENSE #3: Resisting an Officer
The defendant also was convicted of resisting an officer in violation of La.R.S. 14:108A. That statute provides in pertinent part:
Resisting an officer is the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
The phrase "obstruction of" as used herein shall, in addition its common meaning, signification and connotation mean:
(A) flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
Defendant maintains that he was not notified that he was going to be arrested while being chased by the game warden.
Essential to a conviction under R.S. 14:108 is the defendant's knowledge of his arrest or impending detention. State v. Nix, 406 So.2d 1355 (La.1981). Thus, Hines urges that an essential element of the crime was not established by the state and his conviction cannot stand.
However, it is our opinion that Officer Morris' and Deputy Clements' actions, coupled with defendant's reaction to their presence, clearly establish defendant's knowledge that the agent was pursuing him in his official capacity and intended to arrest him. See, State v. Freeman, 411 So.2d 1068 (La.1982). In the instant case, Officer Morris and Deputy Clements appropriately conveyed their intention to detain defendants by turning to pursue them in the clearly marked Wildlife and Fisheries boat with its blue light flashing. The fact that defendant's flight did not begin until Officer Morris turned on his blue signal light, factually supports our conclusion that the defendant was aware that he was being pursued by a law enforcement official attempting to make an arrest or detention. Cf. State v. Nix, supra. Although the defendant was not the driver of the boat, his actions in attempting to dispose of evidence by throwing the bags of fish overboard, tends to show that the defendant was an active participant in the flight from the officers. Thus, his actions aided and abetted the driver in fleeing from the officers, making him a principal under the *963 terms of La.R.S. 14:24.[1] Accordingly, the defendant's conviction for resisting an officer in violation of La.R.S. 14:108A is affirmed.

OFFENSE #4: Careless Operation of a Watercraft
Finally, the defendant was convicted for careless operation of a watercraft under the provisions of La.R.S. 34:850.4. Careless operation of a watercraft is defined under that statute in pertinent part as follows:
Any person who shall operate any watercraft in a careless or reckless manner so as to endanger the person or property of other persons, or at a rate of speed greater than will permit him in the exercise of reasonable care to bring the watercraft to a stop within the assured clear distance ahead, shall be guilty of the crime of careless operation, ...
However, in the instant case, our review of the record shows that the defendant clearly was not the driver of the boat. Therefore, as noted by the trial court, in order for the defendant to be found guilty of the crime of careless operation he must be found to be a principal under La.R.S. 14:24, which provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid an abet in its commission, or directly or indirectly counseled or procure another to commit the crime, are principals.
In order for the defendant to be found guilty as a principal, the record must show that the defendant aided and abetted in the reckless operation of the motorboat, as operation of the motorboat is an essential element of this offense. The record shows that defendant's only actions were throwing bags of fish out of the boat. Despite the fact that we found the defendant to be a principal in the flight from the officer, we can find no evidence whatsoever that the defendant likewise aided or abetted in the careless operation of the motorboat. In the former offense the defendant and the driver were acting in concert to flee from the officers, with defendant disposing of evidence while the driver was taking them from the scene. In the later offense, the driver alone operated the boat in a careless manner. There is no evidence that the defendant exercised any control over the speed or direction of the boat either directly or indirectly or that he procured the driver to commit the crime.
Therefore, under the Jackson v. Virginia standard, we find that no rational trier of fact could have found the defendant guilty as a principal in the reckless operation of a motorboat. Accordingly, defendant's conviction on this charge is reversed.
For the above and foregoing reasons, we affirm the convictions of defendant for taking game fish illegally, possession of overlimit game fish and resisting an officer and the defendant's conviction for careless operation of a motorboat is reversed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] In State v. Freeman, supra, both the driver and passenger of a pickup truck were convicted of resisting an officer, under La.R.S. 14:108, when they fled from a Wildlife and Fisheries agent. In upholding both convictions, the court did not discuss the issue of the passenger as a principal to the offense, although it appears that the passenger in that case took far less action to aid and abet the flight than the defendant in the instant case.