Rodney D. LEWIS and Jonathan
L. Price, Appellants

v.

UNITED STATES, Appellee.

Nos. 07–CF–1356, 07–CF–1417.

District of Columbia Court of Appeals.

Submitted Feb. 25, 2010.
Decided June 24, 2010.

Patrick T. Hand, Washington, appointed by the court, was on the brief for appellant Lewis.

Matthew C. Leefer, Boonsboro, MD, appointed by the court, was on the brief for appellant Price.

Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese, III, Chrisellen R. Kolb, Emily A. Miller, and Seth Adam Meinero, Assistant United States Attorneys, were on the brief for appellee.

Before PRYOR, TERRY, and STEADMAN, Senior Judges.

TERRY, Senior Judge:

Appellants, Rodney Lewis and Jonathan Price, were tried on charges of armed robbery and possession of a firearm during a crime of violence (PFCV). The jury was unable to agree on these charges, but it found both appellants guilty of the lesser included offense of robbery.[1] Appellants contend on appeal that the evidence was insufficient to sustain their convictions of robbery and that the trial court erred in admitting testimony about prior statements of the victim, admitting evidence of other criminal acts, and allowing prejudicial remarks by the prosecutor to be heard by the jury. We reject all of these arguments and affirm both appellants' convictions.

I

On December 29, 2005, at approximately 11:20 p.m., Aaron Gibson was walking in the area of East Capitol Street and 54th Street, S.E., when a silver-colored SUV pulled up and stopped in the middle of

---

1. The PFCV counts were later dismissed as to both appellants.

54th Street. Gibson, a high school student, had just crossed 54th Street when two men got out of the SUV and approached him. Gibson knew both men because they had dated his cousin. Appellant Price, whom Gibson later identified as the passenger in the SUV, pointed a gun at Gibson and took his coat, his "messenger bag" (which contained his wallet and his identification), and his cell phone. Appellant Lewis, who Gibson said was the driver of the SUV, stood to one side and at first "didn't do anything," but then Price handed Lewis something (Gibson could not see what it was), and both men "got in the car and pulled off." As the SUV drove away, Gibson went to another phone (the record is not clear about where he found this phone) and called the police to report the robbery. He also telephoned his cousin to say that "two of her friends ... JB and Rodney" had robbed him.

Within minutes, Metropolitan Police Detective Ali Roberts arrived in response to Gibson's call. Detective Roberts testified that Gibson told him that "JB" and "Rodney" had driven up in a silver SUV and robbed him. Roberts said that Gibson described the gun as a black semi-automatic handgun held by JB and that he identified JB as the driver, although he was not certain whether JB had actually driven the SUV away from the scene. Roberts described Gibson as "highly upset" and "still a little nervous" and stated that, despite what Gibson told him, he "had the impression that [Gibson] wasn't a hundred percent sure" which of the two suspects had been the driver and which

had been the passenger when the SUV first pulled up.

About an hour later, Detective Roberts received a telephone call from Gibson providing the name "Jonathan Price" for the person he had previously identified as "JB." He used that information to assemble an array of nine photographs, one of which was a picture of appellant Price. Roberts then went to reinterview Gibson at his home, and Gibson identified Price from the array as one of the robbers, saying, "That's JB, yeah, that's him." [2] It was then less than two hours after the robbery had taken place. Detective Roberts subsequently obtained an arrest warrant for Price.

In an unrelated incident about three and a half weeks later, at around 3:00 a.m. on January 21, 2006, Sergeant Antonio Graham of the Maryland State Police was on patrol in Capitol Heights, Maryland, when he noticed a gray Dodge Magnum station wagon acting suspiciously.[3] When Sergeant Graham attempted to stop the car, it came to an abrupt halt, and two of its four occupants jumped out and fled. The car then accelerated in reverse but suddenly stopped again. The driver, Price, and the left rear passenger, Lewis, jumped out and fled on foot but were soon apprehended. Another officer on the scene, Corporal Kenneth Goodwin of the Prince George's County Police, noticed that the right front door of the Dodge had been left wide open. Looking into the car through the open door, he saw the magazine of a handgun "protruding out clear as day" from the

---

**2.** Gibson himself testified that he did not "have any trouble" identifying JB from this set of photographs.

**3.** The words "acting suspiciously" were part of the prosecutor's question: "Did you come to observe a gray Dodge Magnum acting suspiciously ... ?" The court had previously cautioned the prosecutor that the circum-

stances that caused Sergeant Graham to stop the station wagon (see note 6, *infra*) should not be heard by the jury, and it instructed the jury that it had done so "because I ruled it has nothing to do with this case." This ruling is not challenged on appeal by either appellant.

space "between the center console and [the] passenger front seat." Corporal Goodwin seized the gun, a black Smith & Wesson semi-automatic pistol. No fingerprints were found on the gun.

After learning of the Maryland incident, Detective Roberts prepared an additional nine-person photo array, which included a photograph of appellant Lewis taken after his recent arrest in Maryland. Gibson again had "no trouble" selecting Lewis from the array and identifying him as the other person who robbed him. Some time later, Gibson was also shown the gun recovered by the police in Maryland; he said that it was "just like the one used" when he was robbed.

Gibson testified before a grand jury that he "was robbed by two boys, JB, [whose real name was] Jonathan Price, and Rodney Lewis." Later, shortly before trial, Sergeant Graham was present when Gibson identified both appellants as the two men who had robbed him, stating that Price was the gunman and Lewis was the driver of the SUV, and that each of them had been, in Graham's words, "dating a cousin or some relative." At trial, Gibson stated that he recognized the men who got out of the SUV on the night of the robbery, but when pressed as to who specifically alighted from the driver's side, he said, "I don't want to do this" and "I'm not comfortable" several times in response to the prosecutor's questions. Finally, after a brief recess, Gibson testified that he did not remember whether he saw the two appellants during the robbery. He also admitted, however, that he had previously told the police, his cousin, and the grand jury that Lewis and Price were the robbers; in addition, he acknowledged that he

had previously identified both appellants from photographic arrays.

In closing argument, the prosecutor attempted to reconcile Gibson's testimony with his previous out-of-court identifications by arguing that Gibson was afraid to state plainly in open court that Price and Lewis were the robbers. The prosecutor said that Price and Lewis had "targeted the right victim" because "he was small and ... he was alone and it was dark, and he was weak, and because they knew him.... [T]hey knew they could count on him to come to court and fail to follow through.... [T]hey picked the right victim. They picked the guy who would come to court and, when push came to shove, he would be too scared to point the finger at them." Price's counsel objected to the statement that Gibson was "too scared." After a brief discussion at the bench,[4] the court ruled:

> The objection to that portion of the argument is sustained.... [T]he jury can draw whatever conclusion they might wish to, but I will not allow you to aid them in that regard.... You can [say] they chose him because they wanted to intimidate him. And you got as close as you can get by saying they chose the right victim. That's about as close as you can get.

## II

Appellants contend that it was error to admit the prior statements of the victim and evidence about their arrest in Maryland which implied that they were involved in other criminal acts. They also claim that the evidence was insufficient to sustain their convictions of robbery. Finally, appellants argue that some of the prosecutor's remarks in closing argument were so

---

4. During the bench conference, Lewis' counsel joined in the objection to the prosecutor's comment.

prejudicial as to require reversal of their convictions. We consider each of these arguments in turn.

### A. *Admissibility*

Decisions on the admissibility of evidence are left to the discretion of the trial court. We will not overturn any such decision unless an appellant demonstrates an abuse of that discretion. *See, e.g., Smith v. United States,* 665 A.2d 962, 967 (D.C. 1995) (citing cases). Appellants claim error in the trial court's decision to admit evidence that they were previously identified by the victim of the robbery, Aaron Gibson, and in the court's admission of evidence concerning their arrest in Maryland a few weeks after the robbery took place.

### 1. *Prior identifications by the victim*

■ In the District of Columbia courts, a prior inconsistent statement is not regarded as hearsay—and is therefore admissible (assuming it is not barred for some other reason)—if the declarant testifies at trial and is subject to cross-examination, and if the prior statement was made "under oath subject to the penalty of perjury." D.C.Code § 14–102(b) (2001); *see Bell v. United States,* 790 A.2d 523, 528–529 (D.C.2002). Appellants argue that the admission of Gibson's prior statements identifying them as the robbers was error because there was no substantial inconsistency with his testimony at trial except for his inability or unwillingness to identify them directly from the witness stand. Though appellants concede that other statements of identification made by Gibson might have been generally admissible under section 14–102(b), they contend that in this case any seeming inconsistency was the result of an "honest mistake" or a mere "waning of memory" on Gibson's part.

■ When Gibson testified that he could not remember having recognized the two robbers, the court allowed the prosecutor to confront him with his prior grand jury testimony (which was, of course, under oath) and other statements in which he had identified Lewis and Price. Gibson admitted that he was not at all hesitant in his identifications when testifying before the grand jury and that, barely a week before trial, he had not expressed any confusion or uncertainty about who the robbers were. Indeed, he acknowledged that, "in all [of his] conversations" with the prosecutor before trial, he had identified the robbers as "JB and Rodney," that is, "Jonathan Price" and "Rodney Lewis."

All of this was laid before the jury in a manner consistent with section 14–102(b), while Gibson was on the witness stand and available for cross-examination. Indeed, as the government points out, both defense attorneys cross-examined him about the inconsistency between his testimony and his prior statements of identification, striving—in vain, as it turned out—to erode jury confidence in the credibility of those prior identifications. Appellants' arguments to the contrary are foreclosed by section 14–102(b).

■ As for Gibson's statements to the police, the prosecutor, and others, which were not covered by section 14–102(b)(1) because they were not under oath, we hold that they were properly admitted under section 14–102(b)(3), which provides for the admission of "an identification of a person made after perceiving the person," so long as the identifying declarant testifies at trial and is available for cross-examination. Insofar as those statements went beyond mere identifications and included information about the crime itself, the trial court ruled, and we agree, that such information was needed to put the identifications "in context" and to clarify

each appellant's individual role in the robbery. *See Porter v. United States,* 826 A.2d 398, 410 (D.C.2003) (prior descriptions of the offense itself may be admissible "to the extent necessary to make the identification understandable to the jury"); *accord, Brown v. United States,* 840 A.2d 82, 89 (D.C.2004) (citing *Porter* and other cases).

On this record we can find no abuse of discretion and no legal error in the court's decision to allow the jury to hear about the prior identifications or in the manner in which this was done. *See, e.g., David v. United States,* 957 A.2d 4, 8–9 (D.C.2008); *Bell,* 790 A.2d at 529; *Sparks v. United States,* 755 A.2d 394, 400 (D.C.2000); *see also United States v. O'Malley,* 796 F.2d 891, 899 (7th Cir.1986) (interpreting Fed. R.Evid. 801(d)(1), which is essentially identical to D.C.Code § 14–102(b)).

### 2. *The Maryland arrest*

Appellants also challenge the admission of evidence relating to their arrest in Maryland. In arguing to the trial court at a pre-trial hearing that this evidence should be excluded, counsel for Lewis asserted that the facts of the Maryland arrest were not relevant because they were too remote in time from the events in this case. Counsel for Price also sought to exclude any evidence about the handgun recovered from the car in Maryland as being unfairly prejudicial. The trial court concluded, however, that the evidence of the Maryland arrest and the gun were "not unfairly prejudicial" but "probative." The court ruled that the jury could consider the evidence in deciding "whether or not it's likely that they had that gun at the time of the underlying incident." Later, after the jury was selected, Lewis' counsel renewed her objection, arguing that the evidence would "mislead and confuse the jury," and Price's counsel urged the court to "monitor very closely" the limits of the testimony elicited by the government.

"An evidentiary ruling by a trial judge on the relevancy of a particular item is a 'highly discretionary decision' that will be upset on appeal only upon a showing of 'grave abuse.'" *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990) (citations omitted). If it is clear that the trial court has weighed the probative value of the challenged evidence against its potential for prejudice, we will generally reverse a decision to admit the evidence only "if its probative value is substantially outweighed by the danger of unfair prejudice...." *(William) Johnson v. United States,* 683 A.2d 1087, 1090 (D.C.1996) (en banc). In particular, it has long been settled, in this jurisdiction and elsewhere, that "prior bad acts" of a defendant that are "criminal in nature and independent of the crime charged" are not admissible "to prove predisposition to commit the charged crime...." *Id.* at 1092; *see Drew v. United States,* 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). However, trial courts are allowed to admit such evidence in some circumstances, provided that it is not unfairly prejudicial. Notably, a court may admit evidence of a weapon recovered at a time and place other than the scene of the crime at issue when there is "some connection" between the weapon and either the defendant or the crime, or both, *King v. United States,* 618 A.2d 727, 729 (D.C.1993), so long as the connection is not "conjectural or remote." *Burleson v. United States,* 306 A.2d 659, 662 (D.C. 1973).

In this case, although the trial court recognized that evidence of the gun recovered in the course of the Maryland arrest might be "devastating," the fact that Gibson told the police that the gun recovered in Maryland looked "just like the one used" in the robbery supported its

admission. *See Hollingsworth v. United States,* 531 A.2d 973, 982 (D.C.1987) (upholding, in an armed robbery case, the admission of a gun recovered from the defendant in an unrelated arrest a month later when the victim identified the gun as the one used in the robbery).[5] Moreover, the record shows that the court carefully restricted the amount of evidence introduced concerning the circumstances of appellants' arrest in Maryland.[6] We think the court should be commended for its careful balancing of the pertinent factors for and against the admission of the gun; we certainly do not discern any abuse of discretion that would warrant reversal. In addition, we note that the jury did not find appellants guilty of either armed robbery or PFCV, which strongly suggests that the jury did not give undue weight to the evidence of the Maryland arrest and the recovery of the gun.

### B. *Sufficiency of the Evidence*

We next consider appellants' claim that the evidence was insufficient to support their convictions of robbery. We assess such claims by viewing the evidence "in the light most favorable to the prosecution to determine whether a reasonable factfinder could find guilt beyond a reasonable doubt." *Lewis v. United States,* 767 A.2d 219, 222 (D.C.2001); *accord, e.g., Blakeney v. United States,* 653 A.2d 365, 369 n. 3 (D.C.1995). A conviction will be reversed only when there is "no evidence produced from which guilt can reasonably be inferred." *Joiner–Die v. United States,* 899 A.2d 762, 764 (D.C.2006).

▮▮▮ To prove a robbery in this case, the government had to show that the appellants took property of value from the complainant's actual possession by force or violence and carried it away. *(Earl) Johnson v. United States,* 756 A.2d 458, 462 (D.C.2000). The government may prove aiding and abetting by showing that the crime was committed by someone and that the alleged aider and abettor assisted or participated in that crime with "guilty knowledge." *Tyree v. United States,* 942 A.2d 629, 636 (D.C.2008).

Appellants claim there was insufficient evidence to convict them because there was only one eyewitness, Aaron Gibson, and no corroborating evidence except for the gun recovered from the car during their arrest in Maryland. They contend that no reasonable person could find Gibson's testimony credible because of the inconsistency between his trial testimony and his prior statements to the police and the grand jury. They further argue that eyewitness identification is inherently unreliable, a fact they say was borne out by Gibson's failure to state openly in court that appellants robbed him at gunpoint. These arguments fail for a number of reasons.

▮▮▮ In the first place, this court has repeatedly held that the testimony of a single eyewitness may be sufficient evidence to sustain a conviction. *E.g., Hill v. United States,* 541 A.2d 1285, 1287–1288 (D.C.1988). Moreover, appellants' argument glosses over the substantial addition-

---

5. "[The robbery victim] testified that the gun recovered by the police on March 24 ... was the same one that the robber pointed at him on February 15. That testimony was sufficient to make the gun and its accompanying ammunition admissible on the armed robbery charge." *Hollingsworth,* 531 A.2d at 982 (citations omitted).

6. The court ordered that no reference be made by the government to the fact that the station wagon in which the appellants were riding was identified as one that had been carjacked or to other items of evidence that were also recovered from the station wagon, including a bulletproof vest and a ski mask.

al evidence which was before the jury. In assessing the credibility of Aaron Gibson, the jury was aware that he already knew both appellants from past acquaintance; they were not strangers to him. In addition, the jury heard the testimony of police officers working on the case and knew that Gibson had previously identified each appellant both by name and in a photo array. There was also evidence of Gibson's conversations with family members and others concerning the robbery, in the course of which he identified each of the robbers by name. Additionally, Gibson made an in-court identification of appellants and affirmed in his testimony that he had previously identified them as the robbers. Although Gibson did say in court that Lewis "didn't do anything" during the robbery, he also testified that the person he had identified as Lewis stood within arm's reach of the other robber (previously identified as Price), who was holding the gun, accepted some item which may have been taken from Gibson,[7] and then got into the car to leave with that other robber. All of this evidence, viewed as it must be in the light most favorable to the government, would be—and was—sufficient to establish each appellant's guilt of the crime of robbery, either as a principal (Price) or as an aider and abettor (Lewis).

### C. The Prosecutor's Argument

Finally, appellants claim that their convictions were tainted by the prosecutor's remarks in closing argument which implied that they were attempting to "intimidate and thereby effectively eliminate the prosecution's key witness." In addition to drawing attention to Gibson as someone who was "small" and "weak," the prosecutor stated that appellants "knew they could count on him to come to court and fail to follow through." The prosecutor went on to argue that Gibson was targeted by appellants because they knew him personally and believed he would be too intimidated to testify against them. In summing up, the prosecutor said, "[T]hey picked the right victim. They picked the guy who would come to court and, when push came to shove, he would be too scared to point the finger at them." Appellants objected to this characterization, and the trial court sustained the objection in part, instructing the jury to disregard the statement that "he would be too scared" to identify appellants.

■■ Remarks by a prosecutor in closing argument may include reasonable comments on the evidence and may draw inferences that support the government's theory of the case. *E.g., Beck v. United States*, 402 A.2d 418, 422 (D.C.1979); *Tuckson v. United States*, 364 A.2d 138, 142 (D.C.1976). However, neither the prosecutor nor defense counsel may make statements that are unsupported by the evidence or are calculated to arouse passion or prejudice. *Williams v. United States*, 483 A.2d 292, 297 (D.C.1984). Appellants argue that the prosecutor crossed the line and improperly attacked them simply for being present at trial. Although the record shows that a defense objection to the prosecutor's argument was sustained in part by the trial court and that the jury was instructed to disregard one specific remark, appellants contend that this was insufficient. They further assert that they could not have pursued further objections without appearing "ever more sinister" to the jury and that, as a

---

7. The object that Price handed to Lewis was never identified because Gibson could not see what it was. Nevertheless, we are satisfied that a reasonable trier of fact could fairly infer from the surrounding circumstances that this object was something that Price had just taken from the victim.

result, they opted not to raise any additional objections. They claim that the trial court took "no adequate efforts" to mitigate the effect of the prosecutor's allegedly improper comments and that reversal of their convictions is therefore required. The government responds that the prosecutor's statements were reasonable inferences drawn from the evidence and contends that, when the court found one statement to be inappropriate, it did all that it needed to do by instructing the jury to disregard that remark.

■ In reviewing claims of error with respect to jury arguments by counsel, we must first determine whether a particular statement was improper. *Parker v. United States*, 757 A.2d 1280, 1289 (D.C. 2000). If we conclude that it was, we must then consider whether the jury's verdict was "substantially swayed" by the impropriety. *Harris v. United States*, 602 A.2d 154, 159 (D.C.1992) (en banc). Even when a prosecutor's comment was the subject of an objection by defense counsel, a conviction will not be overturned unless the comment resulted in "substantial prejudice." *E.g., McGrier v. United States*, 597 A.2d 36, 41 (D.C.1991). In the absence of an objection, we consider only whether the court committed plain error by failing to intervene *sua sponte. See McGriff v. United States*, 705 A.2d 282, 288 (D.C. 1997).

■ The statement that Gibson was "too scared" to testify elicited an objection by defense counsel, which was sustained by the trial court. Therefore, on appeal, this court need only consider whether the jury verdict was substantially swayed by that statement. We note that the court took corrective action by instructing the jury not to consider the statement in its deliberations—a point clarified again later, in an exchange between the jury and the court on the proper use of opening and closing arguments in the jury's deliberations. We see nothing in the record to suggest that the jury improperly considered the prosecutor's remark that Gibson was "too scared" to identify appellants as the two men who robbed him at gunpoint; on the contrary, the jury rejected the two charges involving a gun (despite independent evidence that the gun recovered in Maryland looked "just like" the one used by the robbers) and found appellants guilty of only the lesser offense of unarmed robbery. On this record we simply cannot say that the jury's verdict was substantially swayed by the prosecutor's "too scared" comment.

Indeed, given the testimony throughout the trial, we read all the remarks of the prosecutor, taken as a whole, as simply a tying together of the evidence in a manner consistent with the government's theory of the case. This seems especially likely in light of Gibson's repeated statements on the stand that he was "not comfortable" identifying appellants and did not want to identify them in open court. When combined with other testimony, apparently credited by the jury, that Gibson had previously identified appellants as the robbers to several other persons—his cousin, the police, and the grand jury—we cannot discern a basis for reversal under any standard of review.

### III

The judgments of conviction in both cases are therefore

*Affirmed.*