**Obbie L. ENGLISH and Darnell N. Anderson, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 09–CF–1025, 09–CF–1026.**

District of Columbia Court of Appeals.

Argued June 14, 2011.

Decided July 14, 2011.

---

Richard S. Stolker, Rockville, MD, appointed by the court, for appellant English.

Robert J. Katerberg, with whom David P. Gersch, and Benjamin Wallfisch, Washington, DC, were on the brief, for appellant Anderson.

John P. Gidez, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, John P. Mannarino, and Frederic P. Gallun, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

A jury convicted Obbie L. English and Darnell N. Anderson, *inter alia*, of fleeing from a law enforcement officer in a motor vehicle in a reckless manner, in violation of D.C.Code § 50–2201.05b (2001).[1] On appeal, Anderson and (to a limited extent) English contend that the evidence was insufficient as a matter of law to support their convictions. We affirm English's conviction but reverse Anderson's.

## I.

### BACKGROUND

At trial, the prosecution presented evidence showing that on April 18, 2008, at

---

1. Both English and Anderson were also convicted of two counts of assault with a dangerous weapon (ADW), aggravated assault while armed, three counts of possession of a firearm during the commission of a crime of violence (PFCV), and three other weapons offenses. In an unpublished Memorandum Opinion and Judgment which is being issued simultaneously with this opinion, we have affirmed all of the foregoing convictions, except that we have held that each appellant's three PFCV convictions merge.

approximately 9:50 p.m., Victor Branham and DeAndre Branham were walking in the 1200 block of Brentwood Road, N.E. when several shots were fired at them from the passenger side of a passing automobile. Two passengers in the car were wearing masks. Victor Branham was shot in the leg. He suffered a shattered femur, and he was hospitalized for approximately one week. The vehicle from which the shots were fired was driven by English, and Anderson was one of the passengers.[2]

Prior to the shooting, English had slowed the car down, but after the shots were fired, he turned off the headlights and drove away from the scene at a high rate of speed, evidently seeking to avoid apprehension by an officer who promptly activated his emergency equipment and began to pursue him. At one point, the automobile driven by English was traveling at 95 m.p.h. Eventually, the car stopped, and when the officers reached the vehicle, they found English crouching inside and placed him under arrest. Two of the passengers—Anderson and appellants' former codefendant, Robert Davenport—were apprehended while running from the scene. Two pistols and two masks were found near their path of flight.[3]

English, Anderson and Davenport were all brought to trial. The prosecution introduced extensive testimonial and other evidence with regard to the shooting and the pursuit of the car from which the shots were fired. None of the defendants presented any evidence. The three men were convicted of the various offenses enumerated above. *See* note 1, *supra.* These appeals followed.[4]

## II.

## ENGLISH'S APPEAL

▮ Claiming, *inter alia,* evidentiary insufficiency, English has appealed from all of his convictions, presumably including his conviction for reckless flight from a law enforcement officer. It is not clear whether his claim that the evidence was insufficient is intended to extend to the flight count. In any event, such a claim is entirely lacking in merit.

During closing argument at the trial, in arguing that English was not involved in the shooting or the criminal enterprise, English's attorney asserted that his client could not have been intentionally fleeing from a police officer because he was unaware that the police were in pursuit. During oral argument before this court, which also focused on the assault and weapons counts and English's claimed lack of participation in the other defendants' concerted criminal conduct, his appellate counsel made a similar claim, contending that English had "panicked," that English may have been under coercion by his passengers, and (apparently) that the government had failed to prove beyond a reasonable doubt English's guilt of the fleeing offense. In his brief, however, counsel wrote:

> It is true that by driving "like a bat out of hell," to quote the prosecutor, appellant sought to elude the police.
>
> * * *
>
> [I]n the case at bar, appellant's rapid flight from the crime scene evidenced only a not unreasonable fear of appre-

---

**2.** There is some dispute in the record as to whether there were two or three men riding with English, but the number of passengers is not material to the issues addressed in this opinion.

**3.** An officer had seen Anderson "reaching in his waist like he was grabbing something."

**4.** Davenport's appeal was dismissed for procedural reasons unrelated to this opinion.

hension because of the violent acts that had just been committed by his passengers.

■ Thus, insofar as English's claims in the trial court and at oral argument in this court apply to the reckless fleeing count, they are starkly contradicted by his own brief. "Points not urged in a party's initial brief are treated as abandoned." *In re Shearin*, 764 A.2d 774, 778 (D.C.2000) (citations omitted). This is so, because "the failure to raise an issue in one's brief prevents the opposing party from briefing the issue, and it prevents both this court and opposing counsel from preparing for its consideration at oral argument, contradicting the very purpose of that stage of the appellate process." *Id.* (quoting *George Washington Univ. v. Waas*, 648 A.2d 178, 182 n. 6 (D.C.1994) (citations omitted)). Moreover, even if English's claim had been preserved, which it was not, this court must view the record in the light most favorable to the prosecution, defer to the jury's assessment of credibility, and draw all reasonable inferences in the government's favor. *Rivas v. United States*, 783 A.2d 125, 134 (D.C.2001) (en banc); *Blaize v. United States*, 21 A.3d 78, 82–83 (D.C.2011). In light of the admissions in English's brief and the uncontroverted and compelling proof of flight from the police, including, *inter alia*, the fact that English, having slowed down before the shooting, sped off with his lights turned off immediately thereafter, English has failed to show that there is "no evi-

dence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt...." *Kaliku v. United States*, 994 A.2d 765, 786 (D.C.2010) (citation and internal quotation marks omitted).

## III.

### ANDERSON'S APPEAL

A. *Anderson's claims*

■ Anderson challenges his conviction of recklessly fleeing a law enforcement officer in a motor vehicle on two grounds. First, he claims, relying on the words of § 50–2201.05b,[5] that "[b]y the terms of that statute, only an operator of a motor vehicle can commit that offense." Anderson asserts in his brief that "no reported case in the District of Columbia has been found applying aiding and abetting to this statute or otherwise holding a *passenger* in a car liable for violating it." Second, Anderson asserts in the alternative that even if someone other than the driver may be held criminally liable under the statute pursuant to an aiding and abetting theory, the prosecutor did not prove beyond a reasonable doubt that Anderson aided and abetted English in carrying out the flight. We are unpersuaded by Anderson's first contention, but we agree with the second.

B. *Anderson's claim that only a driver can violate the fleeing statute*

Although the fleeing statute, by its terms, applies to *the operator* of a motor

---

**5.** The fleeing statute, D.C.Code § 50–2201.05b, provides in pertinent part:

(b)(1) An operator of a motor vehicle who knowingly fails or refuses to bring the motor vehicle to an immediate stop, or who flees or attempts to elude a law enforcement officer, following a law enforcement officer's signal to bring the motor vehicle to a stop, shall be fined not more than $1,000, or imprisoned for not more than 180 days, or both.

(2) An operator of a motor vehicle who violates paragraph (1) of this subsection and while doing so drives the motor vehicle in a manner that would constitute reckless driving under § 50–2201.04(b), or causes property damage or bodily injury, shall be fined not more than $5,000, or imprisoned for not more than 5 years, or both.

vehicle, Anderson has cited no authority or persuasive argument, and we know of none, for the proposition that conventional principles of aiding and abetting should not apply to the offense here under consideration. In particular, we are aware of no logical reason why a passenger cannot be an aider and abettor of flight.

Under District of Columbia law,

[i]n prosecutions for any criminal offense all persons advising, inciting or conniving at an offense, or aiding the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be.

D.C.Code § 22–1805 (2001). Thus, if a passenger "advis[es], incit[es], or conniv[es] at" flight in an automobile from a law enforcement officer, or if he "aid[s] the principal offender" in fleeing, then, under the literal terms of the statute, he or she is subject to prosecution just as the driver is.

We know of no District of Columbia case law directly in point with respect to the particular scenario presented here. In *Fox v. United States*, 11 A.3d 1282 (D.C. 2011), the driver of a vehicle and his two passengers were convicted of armed robbery and related offenses, as well as of fleeing from a police officer. This court affirmed the convictions of all three defendants of the latter offense. The issue presented to us by Anderson in this case, however, was not raised by any of the defendants in *Fox*, and we did not address it. As this court recently had occasion to reiterate in *Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 610 (D.C.2011):

"Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925); *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C.1994) (quoting *Webster* ). "[T]he rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C.1996) (quoting *Murphy*, 650 A.2d at 205).

Case law from other jurisdictions suggests that conventional aiding and abetting principles should apply here. In *State v. Patch*, 594 N.W.2d 537 (Minn.Ct.App. 1999), the police were seeking to serve a woman with outstanding arrest warrants. The defendant alerted the woman that "the cops are coming to get you." The defendant was convicted of obstructing legal process. The appellate court reversed the defendant's conviction of that offense, but observed that the state "could ... have charged [the defendant] with aiding and abetting [the other woman] to flee a police officer in a motor vehicle." *Id.* at 540.

In *State v. Hines*, 465 So.2d 958 (La. App.2nd Cir.1985), a passenger in a motor boat was convicted, *inter alia*, of reckless operation of watercraft and of obstructing an officer by aiding and abetting flight. The evidence showed that the driver of the boat was attempting to escape from pursuing game wardens, and that during the chase, the passenger threw bags of fish overboard. While reversing the passenger's conviction of careless operation of the boat, because the passenger did not aid or abet that offense, *id.* at 963, the court upheld his conviction of obstructing the officers:

Although the defendant was not the driver of the boat, his actions in at-

tempting to dispose of evidence by throwing the bags of fish overboard tend to show that the defendant was an active participant in the flight from the officers. Thus, his actions aided and abetted the driver in fleeing from the officers, making him a principal under the terms of the [Louisiana statute].[6]

*Id.* at 962–63.

In *People v. Branch*, 202 Mich.App. 550, 509 N.W.2d 525 (1993), the defendant, a passenger in a vehicle which was involved in a twenty-two mile high speed chase, was convicted of fleeing and eluding a police officer. He appealed, claiming that Michigan's fleeing and eluding statute applied only to drivers. The court rejected his contention, holding that a passenger may be charged with aiding and abetting a driving offense and that the defendant intentionally assisted the driver by giving him directions and by throwing beer cans out of the car, thus slowing the police pursuit. *Id.* at 526.

In light of the authorities cited above,[7] as well as the lack of any reasoned justification for declining to apply recognized aiding and abetting principles to the offense of reckless fleeing a law enforcement officer in a motor vehicle, we cannot agree with Anderson's broad claim that the fleeing statute applies only to the operator of the vehicle and cannot be violated by a passenger.

### C. *Sufficiency of the evidence of aiding and abetting by Anderson*

We now turn to the dispositive question, namely, whether Anderson has demonstrated that, viewing the record, as we must, in the light most favorable to the prosecution, see pages 5–6, *supra,* we must deem the evidence insufficient as a matter of law to establish his guilt beyond a reasonable doubt.

We begin by noting that, although the fleeing statute technically falls under Chapter 22 of Title 50 of the District of Columbia Code, entitled "Regulation of Traffic," it is an offense that may often have grave consequences. In its recent opinion in *Sykes v. United States*, —— U.S. ——, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), the Supreme Court described flight

---

6. The court also stated:
 In *State v. Freeman*, [411 So.2d 1068 (La. 1982) ], both the driver and passenger of a pickup truck were convicted of resisting an officer, under La.R.S. 14:108, when they fled from a Wildlife and Fisheries agent. In upholding both convictions, the court did not discuss the issue of the passenger as a principal to the offense, although it appears that the passenger in that case took far less action to aid and abet the flight than the defendant in the instant case.
 *Id.* at 963 n. 1.

7. Although not directly on point, we note that there is authority for the proposition that, depending on the evidence in a particular case, if the vehicle in which a passenger is riding is involved in an accident causing death or injury, and if he or she fails to stop or to render assistance to the injured person, the passenger may be liable as an aider and abettor. *See Espinoza v. State*, 183 So.2d 560, 561 (Fla.Dist.Ct.App.1966) (conviction reversed for insufficient evidence, but court stated that "[i]t is altogether possible that a passenger may, by his affirmative act, aid and assist a driver in violation [of statute requiring driver to stop] and become subject to conviction as an aider and abettor"); *People v. Hoaglin*, 262 Mich. 162, 247 N.W. 141, 144 (1933) (passenger in automobile at time of accident may properly be charged with aiding and abetting misdemeanor of leaving scene of accident without rendering assistance to injured person; little, if any analysis, because precise question may not have been raised). *See also Warren v. State*, 131 Tex.Crim. 303, 98 S.W.2d 197, 198–99 (1936) (in murder case arising out of automobile collision, passengers not criminally liable where there was no showing that they were on joint mission with driver or that they did or said anything to cause driver to collide with decedent's car).

such as that which occurred here as "a provocative and dangerous act that dares, and in a typical case requires, the officers to give chase." *Id.* at 2273. Accordingly, "officers pursuing fleeing drivers may deem themselves duty bound to escalate their response to ensure that the felon is apprehended." *Id.* "Confrontation with police is the expected result of vehicle flight[,]" and "risk of violence is inherent to [it]." *Id.* at 2273–74. Indeed, as the Court went on to explain:

> A 2008 International Association of Chiefs of Police (IACP) study examined 7,737 police pursuits reported by 56 agencies in 30 states during 2001–2007. C. Lum & G. Fachner, Police Pursuits in an Age of Innovation and Reform 54. Those pursuits, the study found, resulted in 313 injuries to police and bystanders, a rate of slightly over 4 injuries to these nonsuspects per 100 pursuits. *Id.* at 57. Given that police may be least likely to pursue suspects where the dangers to bystanders are greatest—*i.e.,* when flights occur at extraordinarily high speeds—it is possible that risks associated with vehicle flight are even higher.

*Id.* at 2274. In other words, the offense which English committed and Anderson allegedly aided and abetted is not a minor traffic violation which can be resolved by a ticket and a small fine. Rather, it is a serious crime, which in this case was made even more dangerous by the speed at which English traveled.[8]

The trial judge instructed the jury as follows with respect to the elements of the fleeing statute:

> One, that the defendant was operating a motor vehicle.

Two, that a law enforcement officer signaled the defendant to bring the motor vehicle to a stop.

Three, that following the signal from a law enforcement officer the defendant failed or refused to bring the motor vehicle to an immediate stop or attempted to allude the law enforcement officer.

Four, that he did so knowingly and intentionally, this means consciously, voluntarily, and on purpose, not mistakenly, accidentally or inadvertently.

And five, that while failing or refusing to bring the motor vehicle to an immediate stop, fleeing or attempting to allude the law enforcement officer the defendant drove recklessly.

No party objected to the instruction, and we agree that it represents a correct statement of the law.

 "In general, to prove aiding and abetting the government must show that (1) a crime was committed by someone; (2) the accused assisted or participated in its commission, and (3) the accused participated with guilty knowledge." *Lancaster v. United States,* 975 A.2d 168, 174 (D.C. 2009) (citing *Tyree v. United States,* 942 A.2d 629, 636 (D.C.2008)); *accord, Carter v. United States,* 957 A.2d 9, 16 (D.C.2008); *Fox,* 11 A.3d at 1287; *Dang v. United States,* 741 A.2d 1039, 1043 (D.C.1999). To be guilty as an aider and abettor of a charged offense, however, the defendant must be shown to have "assisted or participated *in that crime* with guilty knowledge." *Lewis v. United States,* 996 A.2d 824, 831 (D.C.2010) (emphasis added) (citation and internal quotation marks omitted). In the words of Judge Learned Hand, written three quarters of a century ago

---

8. English was sentenced to imprisonment for eighteen months for the flight offense, consecutive to any other sentence, to be followed by thirty-six months of supervised release.

Anderson received a consecutive sentence of only fourteen months, but his period of supervised release was the same as English's.

but still recognized as authoritative on the point, *see Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *Wilson–Bey v. United States,* 903 A.2d 818, 831 (D.C.2006) (en banc), *cert. denied,* 550 U.S. 933, 127 S.Ct. 2248, 167 L.Ed.2d 1089 (2007), an aider and abettor is guilty as a principal if he "in some sort associate[s] himself with the venture, participate[s] in it as something he wishes to bring about, and ... seek[s] *by his action* to make it succeed." *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938) (emphasis added). The key question is whether, drawing all reasonable inferences in the prosecution's favor, an impartial jury could fairly find beyond a reasonable doubt that Anderson intentionally participated in English's reckless flight from the pursuing officer, and that he not only wanted English (and his passengers) to succeed in eluding the police (which Anderson undoubtedly did), but that he also took concrete action to make his hope a reality.

The government has cited no evidence that would support an affirmative answer to this question, and we are aware of none. In *Hines,* 465 So.2d at 962–63, relied on by the government, the Supreme Court of Louisiana held that the defendant, a passenger in a motor boat, actively participated in the flight from the pursuing game wardens by throwing bags of fish overboard. There was no such conduct shown in this case. The *Branch* decision, 509 N.W.2d at 526, is distinguishable on essentially the same ground.

The government argues as follows:

Although Anderson was not driving the Grand Marquis, the jury could reasonably conclude that he aided and abetted English's flight from the police by supporting, assisting, encouraging, or cooperating with the chase.[9] Indeed, he was an active participant in the flight from the police; he continued his effort to flee the law enforcement officers after the car was brought to a halt.

Anderson's presence in the car while English was "driving like a bat out of hell," and Anderson's subsequent flight on foot, undoubtedly show that he did not want to be apprehended, and the jury could fairly so find. Missing, however, is any evidence that Anderson took any concrete action to assist English in escaping from the police.[10] This is not a case, for example, in which "there appears to be some indication in the record before us that [Anderson] may have *urged or directed* the driver to take evasive action." *United States v. Cook,* 181 F.3d 1232, 1235 (11th Cir.1999) (emphasis added) (citation omitted).

In *Dennis v. State,* 342 Md. 196, 674 A.2d 928 (1996), *vacated on other grounds,* 519 U.S. 802, 117 S.Ct. 40, 136 L.Ed.2d 4 (1996), *reaffirmed,* 345 Md. 649, 693 A.2d 1150 (1997), the court stated:

> There ordinarily is no reason to believe that a passenger in a vehicle is guilty, as an accessory or aider and abettor, of the traffic offense with which the driver may be charged. *This is true even when the offense is fleeing and eluding.*

*Id.* at 932 (emphasis added); *accord, De-Rosa v. Rambosk,* 732 F.Supp.2d 1285, 1298–99 (M.D.Fla.2010) (no probable cause to arrest passenger for aiding and abetting

---

**9.** Presumably, the writer of the brief meant "the flight" rather than "the chase."

**10.** Indeed, it is not at all obvious that, short of stepping on the brake or shooting at or threatening to shoot English, Anderson could have done anything to prevent the latter from speeding away. Moreover, the evidence does not reveal whether English's speeding at 95 miles per hour represented Anderson's best chance of escape; he might have done better if he had been able to bail out before the pursuit began.

fleeing driver where passenger did not aid in the driving of the vehicle and had no control over it or capacity to stop it). The court in *Dennis* did indicate that if, as in the present case,

> the passenger in an automobile in which the driver is charged with fleeing from the police, flees after the automobile is stopped, it is possible for there to arise at least a reasonable suspicion that the passenger was the driver's accessory or aider and abettor.

674 A.2d at 933 (footnote omitted).

We agree with the court's analysis in *Dennis*.[11] Although Anderson's flight on foot after the car came to a stop might well give rise to a reasonable articulable suspicion that he was an aider and abettor to English's flight in the car, the standard for articulable suspicion is not a demanding one, *see, e.g., Gomez v. United States*, 597 A.2d 884, 888–89 (D.C.1991), and the evidence warranting such a suspicion is not sufficient to support a finding of guilt beyond a reasonable doubt, which requires "near certitude" of the defendant's guilt. *Rivas*, 783 A.2d at 133 (citation omitted).[12]

## CONCLUSION

For the foregoing reasons, English's conviction of reckless flight from a law enforcement officer in a motor vehicle is affirmed. Anderson's conviction of the same offense is reversed, and his case is remanded to the trial court with directions to enter a judgment of acquittal on that charge.

*So ordered.*

---

11. We recently reiterated that decisions of the Court of Appeals of Maryland are "accorded the most respectful consideration by our courts." *In re Estate of Turpin*, 19 A.3d 801, 809 n. 11 (D.C.2011) (citing *Roberts–Douglas v. Meares*, 624 A.2d 405, 419 n. 20 (D.C. 1992)). This is so, in part, because "District of Columbia common law is derived from Maryland law...." *Roberts–Douglas*, 624 A.2d at 419 n. 20; *see also In re Estate of Parnell*, 275 F.Supp. 609, 610 (D.D.C.1967).

12. Arguably, a reasonable a jury might find that the three defendants planned the shooting and that flight from the police would be a reasonably foreseeable consequence of their plan. *See Cook*, 181 F.3d at 1233. The government did not, however, present any such claim in its brief, and Anderson therefore had no opportunity to respond to it. *See, e.g., Sheetz v. District of Columbia*, 629 A.2d 515, 519 n. 5 (D.C.1993) (affirmance on different ground permissible only if there has been procedural fairness and if appellant has had opportunity to contest such ground). In any event, the federal appellate courts, in the context of possible sentence enhancement for passengers in Anderson's position under the federal sentencing guidelines, have "required more than evidence of an endangering conduct that was reasonably foreseeable." *Cook*, 181 F.3d at 1235. Rather, they have required some form of "active participation by the accused." *Id.* (Citations omitted.)