BROWN, Chief Judge.
|]On May 19, 2007, Keisha and Jerome Avery drove from Houston to Shreveport, Louisiana, with a large amount of marijuana to sell to defendant, Nelson “Boo” Youngblood. The week before, defendant contacted Keisha and requested a substantially large amount of marijuana, 50 pounds, and 1,000 ecstasy pills. Once she and her husband obtained the marijuana, she contacted defendant to arrange the meeting. The parties did not meet until that evening because defendant kept stating that he was waiting on “his people.” Rather than meeting as planned at a Sonic restaurant, defendant requested that the Averys meet him at a residence on Abilene Street, a location Keisha knew because she had been there before. When the couple arrived at Abilene Street, it was dark and they drove past the house. Defendant went to the end of the driveway and waved them back. A tall man, not known by the Averys, came outside and, without saying a word, turned around and went back into the house. As Jerome Avery took two garbage bags containing 30 pounds of marijuana out of the trunk, Keisha began chatting with defendant.
Defendant stated that “his people” were in the house. As Jerome Avery proceeded to enter the house, Keisha and defendant continued talking. Immediately upon entering the house, Jerome saw the tall man who had come outside sitting at a table and another man with a black bandana around his face holding an assault rifle. Jerome immediately dropped the marijuana bags, then turned around and ran out the house. Keisha was shot seven times by two different weapons, and she died as a result of her injuries.
12Approximately two weeks prior to Keisha’s murder, on May 3, 2007, defendant took Sakoria Williams to a pawn shop and she purchased for him an assault rifle, a Romanian WASR-10, and four boxes of Wolf 7.62x39 ammunition. No weapon was found at the scene; however, Wolf 7.62x39 spent cartridges were recovered.
Defendant and the two shooters fled with the marijuana. Defendant was subsequently arrested in Pearland, Texas, on November 24, 2007. Defendant, Nelson “Boo” Youngblood, was charged with the second degree murder of Keisha Avery, in violation of La. R.S. 14:30.1. Following a jury trial, defendant was found guilty as charged and he was sentenced to life imprisonment without benefits. Defendant has appealed his conviction. We affirm.

Discussion

Sufficiency of the Evidence

Defendant admits that he was a participant in a felonious drug transaction. He denies any knowledge or intent concerning an armed robbery and murder.
A defendant may be entitled to an acquittal or a manslaughter verdict under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
*1125 Pursuant to La. R.S. 14:30.1, Second Degree Murder is the killing of a human being:
(1) when the offender has a specific intent to kill or to inflict great bodily harm; or
(2) when the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, second degree robbery, simple robbery, ... even though he has no intent to kill or to inflict great bodily harm.
Manslaughter is a homicide without any intent to cause death or great bodily harm while engaged in any felony not enumerated in article 30 or 30.1. La. R.S. 14:31(2)(a).
Armed Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
La. R.S. 14:24 states that all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
A person who aids and abets another in a crime by participating in the planning or execution of that crime is liable to the same extent as the person who directly commits the crime, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981); State v. Durden, 36,-842 (La.App.2d Cir.04/09/03),. 842 So.2d 1244, writ denied, 03-1350 (La.11/26/03), 860 So.2d 1131. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Durden, supra. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, appeal after new sentencing hearing, 45,133 (La.App.2d Cir.04/28/10), 36 So.3d 396, cert. denied, — U.S. —, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
Intent must necessarily be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983); State v. Durden, supra. Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Durden, supra.

La. R.S. 14:30.1 Specific Intent

Was the evidence sufficient to support the jury’s finding that defendant, although not the triggerman, had the specific intent to kill or inflict great bodily harm upon Keisha and/or Jerome Avery? The evidence clearly established a specifically intended killing as well as an attempted murder. The only serious question relates to defendant’s role in the killing and the proof of his specific intent.
1 ¿There was direct evidence of defendant’s participation in this set-up murder/robbery. Defendant’s participation was not minor. A rational juror, viewing the overall evidence in the light most favorable to the prosecution, could have concluded beyond a reasonable doubt that defendant actively participated in the killing of the victim (whose death was obviously *1126 purposefully inflicted). Jackson v. Virginia, supra. Given the evidence presented, it was certainly reasonable for the jury to conclude that defendant’s role was that of an equal partner in all of the crimes committed during this episode, including the murder. See State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983); State v. Sutton, 436 So.2d 471 (La.1983); State v. Wingo, 457 So.2d 1159 (La.1984), cert. denied, 471 U.S. 1145, 105 S.Ct. 2691, 86 L.Ed.2d 708 (1985).
A review of the evidence presented at trial, according to the Jackson standard, leads to the conclusion that the evidence is sufficient to support defendant’s conviction of second degree murder.[1] At trial, Stephanie Rogers testified that she put Keisha Avery in contact with defendant on March 18, 2007. Ms. Rogers informed Keisha that defendant was in the business of distributing narcotics in the Cedar Grove area of Shreveport, a business the victim, Keisha Avery, was engaged in with her husband. Ms. Rogers’ testimony established that defendant was acquainted with Keisha Avery. Defendant’s own statement confirmed that he knew both Keisha and Jerome Avery through Stephanie Rogers. In fact, prior to Keisha’s murder, |6some small drug transactions occurred between defendant and Keisha Avery.
Sakoria Williams testified that approximately 16 days before the murder of Keisha Avery, defendant took her to National Jewelry and Loan, a pawnshop, to purchase an AK-47 assault rifle and Wolf brand 7.62x39 caliber ammunition. Casey Bolin, the pawn shop employee, corroborated Ms. Williams’ testimony regarding the purchase of this rifle and ammunition. Ms. Williams testified that after she purchased the weapon, she left it in the vehicle with defendant. Ms. Williams further testified that defendant asked her to buy the weapon for him because he was a convicted felon and could not do so on his own.
Richard Beighley, firearms supervisor at the North Louisiana Crime Lab, testified that the shell casings recovered from the scene were consistent with being fired from a rifle and not a handgun. Both the SKS and AK-47 look alike and use the same ammunition. Detective Rod Johnson also testified that the evidence obtained from the crime scene was consistent with the information provided on the sales receipt from National Jewelry and Loan in that the shell casings were of the same caliber and brand of ammunition purchased by Ms. Williams for defendant.
Jerome Avery testified that he knew defendant through his wife, Keisha, who met defendant through Stephanie Rogers. While Avery testified that he was in the business of transporting narcotics, defendant was primarily his wife’s contact. Avery stated that on two previous occasions 17his wife had delivered approximately three pounds of marijuana to defendant at a location on Abilene Street in Shreveport, Louisiana.
Jerome Avery testified that approximately one week before his wife’s murder, defendant contacted her to request a substantially large amount of marijuana, 50 pounds, and 1,000 ecstasy pills. The transaction was scheduled to take place on May 19, 2007. Avery testified that defendant requested that they meet on Abilene Street, where Keisha had previously transacted business with him. Defendant in his statement to detectives confirmed that he was the one who requested they meet at the Abilene Street house.
When Keisha and Jerome Avery arrived at the residence on Abilene Street, Avery *1127 saw a tall man come outside before going back into the house. Defendant told Avery that “his people” were in the house. Avery testified that he took the marijuana bags out of the car and walked up to the house with Keisha and defendant following him. As soon as he entered, Avery noticed two men, one the tall guy who had just come outside; and the other man in the house was a shorter man holding an SKS assault rifle, his face was obscured by a bandana. Avery testified that, at that point, he knew a robbery and possibly a murder were about to happen, so he dropped the marijuana bags and ran. As soon as he took approximately two steps, the man with the assault rifle shot his wife. Because it happened within seconds of his entering the house, Avery testified that defendant was still under the carport because he had been following Keisha Avery into the house.
1 sJerome Avery identified defendant in court as the person he and his wife talked to on the phone, then met on Abilene Street. He testified that defendant was the only person who knew that they were transporting the marijuana. Lieutenant Carl Townely testified that the value of the amount of marijuana described by Avery ranged somewhere from $80,000 to $150,000.
The State also introduced evidence that defendant fled the jurisdiction. Layne Malich testified that defendant was on parole supervision and was not allowed to leave the jurisdiction without permission of the court. Additionally, defendant was required to report in to the office of probation and parole. While he reported regularly for a while, defendant’s last report was on May 18, 2007, a day before this incident occurred. H.B. Shaver, Jr., testified that an ongoing search was initiated for defendant who was finally apprehended in Pearland, Texas, in November of 2007.

La. R.S. 14:30.1 Unintended Killing During an Armed Robbery

Contrary to defendant’s argument, the evidence in this case was sufficient to show that defendant was a principal to an armed robbery which resulted in the death of Keisha Avery. Defendant was the only person, out of all the people present at the house on Abilene Street, who knew all of the persons involved and knew that a large amount of marijuana would be delivered by the Averys. Defendant changed the meeting location to Abilene Street where two men with guns and bandanas were lying in wait. The shooting took place immediately. There was no negotiating, talking, or |9confrontation. None of the marijuana was recovered from the scene. The jury could have easily found that defendant was a principal to armed robbery which resulted in a murder. State v. Dur-den, supra.
The state was able to demonstrate that defendant had the motive and opportunity to participate in an armed robbery in that he planned and prepared for a drug transaction involving a substantial amount of marijuana with Keisha Avery, someone he was familiar with, having conducted business with her on previous occasions. Defendant arranged for the purchase of an assault rifle, and he determined the location of the drug transaction. This assignment of error is without merit.

Other Crimes Evidence

La. C.E. 404(B) in pertinent part states: (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by *1128 the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant; demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404(B)(1), i.e., motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or | inaccident; and show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993).
Evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that forms an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Colomb, 98-2813 (La.10/01/99), 747 So.2d 1074; State v. Coates, 27,287 (La.App.2d Cir.09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/96), 668 So.2d 365.
The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Roberson, 40,809 (La.App.2d Cir.04/19/06), 929 So.2d 789; State v. Gatti, 39,833 (La.App.2d Cir.10/13/05), 914 So.2d 74, writ denied, 05-2394 (La.04/17/06), 926 So.2d 511.
The state filed two notices of intent to introduce other crimes, wrongs or acts committed by the defendant. The first notice informed defendant of the state’s intent to introduce the testimony of Stephanie Rogers to show that she facilitated the connection between defendant and the victim, Keisha Avery, for the purpose of setting up drug transactions, as well as the testimony of Jerome Avery to show that he and/or his wife, Keisha Avery, made other drug transactions with the defendant in 2007. The second notice provided that the state would introduce the testimony of Sakoria Williams wherein she would state that she bought an assault rifle and ammunition for defendant who was a convicted felon. The state also informed defendant that evidence would be introduced that indicated the defendant was on [^parole with the Louisiana State Probation and Parole Office and that he was apprehended in Pearland, Texas, in violation of his parole. The defense filed a memo in opposition to the state’s 404(B) notices. Prior to the start of trial, a 404(B) hearing was held.
At the 404(B) hearing, the testimony adduced from Stephanie Rogers, Sakoria Williams, Jerome Avery, Detective Johnson, and Layne Malich was consistent with their testimony at the subsequent trial in this matter.
After arguments, the trial court ruled that the evidence that was the subject of the 404(B) notices went to planning, intent, guilty knowledge and motive. Additionally, the court found that the probative value outweighed any prejudicial effect. Thus, the court ruled that the evidence sought to be introduced would be admissible at trial.
Considering the testimony presented at trial in conjunction with the arguments presented at the hearing, there is no showing that the trial court’s ruling was an abuse of discretion; therefore, the ruling will not be overturned. State v. Scales, 93-2003 (La.05/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Caston, 43,-565 (La.App.2d Cir.09/24/08), 996 So.2d 480.
*1129 With the exception of the testimony concerning defendant being on parole, the evidence was an integral part of the criminal transaction — the evidence convincingly showed that this was a planned robbery/murder.
The State’s showing to the jury of an AK-47 assault rifle “similar” to the weapon used to shoot Keisha Avery is problematic. No weapons were recovered in connection with this murder and the rifle shown to the jury l12looked like but was not the same model as the one alleged to have been purchased by Sakoria Williams for defendant two weeks prior to Keisha Avery’s murder. If error, however, it was harmless. See State v. Burd, 40,490 (La.App.2d Cir.01/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/09/06), 941 So.2d 35.
The testimony of defendant’s parole officer is also troubling. The state argues that this testimony showed flight. The evidence of defendant’s status as a parolee did not show system, knowledge, intent, planning or motivation. Defendant’s flight was demonstrated by other evidence. However, this was harmless error. Other admissible evidence had already shown that defendant was on parole.

Conclusion

For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Actually, the evidence supports a finding that he was guilty of first degree murder.