WILLIAMS, J.
11 The defendant, Jermaine Peayre Carter, was charged by bill of information with distribution of a Schedule I controlled dangerous substance (“CDS”), i.e., marijuana, a violation of LSA-R.S. 40:966(A), and aggravated flight from an officer, a violation of LSA-R.S. 14:10s.!.[1] Following a jury trial, he was found guilty of distribution of a Schedule I CDS and flight from an officer, a lesser included offense to the charge of aggravated flight from an officer. He was sentenced to serve 28 years at hard labor for the distribution of marijuana conviction and 6 months for the flight from an officer conviction. The sentences were ordered to be served consecutively. For the following reasons, we affirm the defendant’s convictions and sentences.
FACTS
On February 5, 2009, Officer Gene Hil-len of the Benton Police Department conducted a traffic stop in Benton, Louisiana. The female driver appeared frightened when the officer observed traces of marijuana in her vehicle. To prevent being arrested, the woman informed the officer that she “could get dope from Shreveport.” Shortly thereafter, the Benton Police Department arranged a controlled drug buy, using the woman as a confidential informant. The drug transaction was scheduled to take place at a Dixie Mart convenience store in Benton.
Officer Hillen testified as follows: he accompanied the informant as she made a telephone call to an unknown individual; he listened as the ^informant arranged to purchase marijuana to be delivered to the north side of the Dixie Mart parking lot; after the conversation between the informant and the other party, Officer Hillen parked his police vehicle across the street from the store to await the completion of the drug buy; using binoculars, Officer Hillen observed a silver sports utility vehicle turn into the parking lot of the store; two individuals were in the vehicle; the defendant, Jermaine Peayre Carter, was later identified as the passenger of the vehicle; Quion Smith was identified as the driver; the informant approached the driver’s side of the vehicle, talked to Smith for several seconds and gave Smith money; Smith gave the informant “something” in return; the informant then executed a prearranged signal to indicate to the officer that she had purchased the drugs.
After the drug transaction was completed, the defendant exited the vehicle and entered the store. When the defendant left the store, Officer Hillen, who was dressed in tactical police clothing marked “POLICE,” approached the defendant, identified himself as “police” and instruct *170 ed the defendant to “Stop, don’t move.” The defendant looked at the officer and then looked at the vehicle. The defendant then ran to the vehicle and jumped inside, as Officer Hillen continued to yell, “Stop.” By this time, the officer had his weapon drawn and pointed at the defendant. Smith drove away and a high-speed chase ensued. The vehicle traveled toward Bossier City at approximately 115 mph. Officer Hillen and other police officers pursued the vehicle in marked police cars with lights and sirens activated. At least 20 marked police vehicles were involved in the pursuit, all with ^activated lights and sirens.
Benton Police Chief Charles L. Pilkinton testified as follows: he participated “as a backup” in the controlled drug buy; he observed Officer Hillen attempt to stop the defendant; he also observed Officer Hillen draw his weapon. Chief Pilkinton was the lead marked police car in the pursuit. He observed as Smith pulled out of the parking lot in front of traffic and ran multiple red lights during the chase. He pursued the vehicle with his lights and sirens activated, driving approximately 111-128 mph. He observed the defendant throw a plastic-covered package out of the passenger window; the package hit the windshield of Chief Pilkinton’s police car and splattered, leaving a substance on the windshield; the remainder of the substance went “all over” the highway. The chase concluded when Smith turned on a dead-end street in Cad-do Parish. Smith exited the vehicle and fled on foot.[2] The defendant was found sitting in the front passenger seat of the vehicle. The substance that was thrown out of the window was recovered and tested positive for marijuana.
The defendant was arrested and charged by bill of information with distribution of a Schedule I CDS (marijuana), in violation of LSA-R.S. 40:966(A), and aggravated flight from an officer, in violation of LSA-R.S. 14:108.1. The defendant waived his right to counsel. The trial court granted the defendant’s motion to represent himself, after warning him of the dangers of self-representation.[3] Following a jury trial, the defendant was |4found guilty of distribution of a Schedule I CDS and flight from an officer. He was sentenced to serve 28 years at hard labor on the drug conviction and 6 months on the flight from an officer conviction, to be served consecutively. The defendant’s motions to reconsider sentence and “to correct and vacate an illegal sentence” were denied.
The defendant appeals.
DISCUSSION
The defendant contends the evidence was insufficient to support his conviction for flight from an officer. He argues that since the state stipulated that he was not the driver of the vehicle involved in the high speed chase, he should not have been convicted of that offense.
A claim regarding sufficiency of evidence is properly raised by a motion for post verdict judgment of acquittal. However, if the defendant fails to make such motion, the issue will be reviewed on appeal when raised by a formal assignment of error. LSA-C.Cr.P. art. 821 and art. 920; State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190. In reviewing the sufficiency of the evidence to support a conviction, the reviewing court *171 must determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes charged were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The defendant was convicted of flight from an officer under LSA-R.S. 14:108.1. This statute provides, in pertinent part:
A. No driver of a motor vehicle ... shall intentionally refuse to bring a vehicle ... to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehiclef.]
[[Image here]]
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24. A principal is liable to the same extent as the person who directly commits the crime or may be convicted of a lower degree of the crime. State v. Youngblood, 45,576 (La.App.2d Cir.9/29/10), 48 So.3d 1122; State v. White, 42,725 (La.App.2d Cir.10/24/07), 968 So.2d 901. See also, State v. Wright, 2001-0322 (La.12/4/02), 834 So.2d 974, cert. denied, 540 U.S. 833, 124 S.Ct. 82, 157 L.Ed.2d 62 (2003).
In State v. Hines, 465 So.2d 958 (La. App. 2d Cir.), writ denied 467 So.2d 536 (La.1985), a Wildlife and Fisheries agent, along with two sheriffs’ deputies, attempted to make a safety check of a boat by pulling behind the boat and activating a blue signal light. The boat sped away at a high rate of speed. During the chase, the officers observed the defendant, who was a passenger in the boat, throw several garbage bags containing illegal game fish, from the boat. The defendant’s convictions included resisting an officer by flight. This Court affirmed the conviction, stating:
[The officers’] actions, coupled with defendant’s reaction to their presence, clearly establish defendant’s knowledge that the agent was pursuing him in his official capacity and intended to arrest him. In the instant case, [the officers] appropriately conveyed their intention to detain defendants by turning to pursue them in the clearly marked Wildlife and Fisheries boat with its blue light flashing. The fact that defendant’s flight did not begin until Officer Morris turned on his blue signal light, factually supports our conclusion that the defendant was aware that he was being pursued by a law enforcement official attempting to make an arrest or detention. Although the defendant was not the driver of the boat, his actions in attempting to dispose of evidence by throwing the bags of fish overboard, tends to show that the defen *172 dant was an active participant in the flight from the officers. Thus, his actions aided and abetted the driver in fleeing from the officers, making him a principal under the terms of La.R.S. 14:24.
Id. at 962 (internal citations omitted).
In the instant case, the state’s evidence shows that Officer Hillen conveyed his intention to detain the defendant by ordering the defendant to stop and pointing his weapon at the defendant. The defendant’s actions of looking from the officer to the vehicle shows that he was aware that the 17officer was attempting to detain him. The flight began when the defendant refused to surrender, jumped into the vehicle and fled the scene with his accomplice. The vehicle was pursued by approximately 20 marked police vehicles, all with lights and sirens activated. Although the defendant was not the driver of the vehicle, his actions — jumping into the vehicle and throwing the marijuana out of the window of the speeding vehicle — supports the jury’s conclusion that he was an active participant in fleeing from the officers. The defendant clearly aided and abetted Smith in their attempted escape, thereby making the defendant a principal to the crime. Consequently, we conclude that the state presented ample factual evidence to support any rational jury’s finding that the defendant knowingly participated in the commission of the crime of flight from an officer beyond a reasonable doubt. This assignment lacks merit.
The defendant also contends his right to a fair trial was violated by the trial court’s failure to issue a subpoena to the confidential informant involved in the drug transaction. He argues that he made repeated requests for the subpoena to be issued, but to no avail.
A review of the record shows that the defendant made four separate requests for a subpoena to be issued to the informant. In a request dated January 25, 2010, the defendant identified the person as “The Police SI Drug Deal Girl,” but provided no further identifying name or address for the person. On April 14, 2010, the defendant submitted a second subpoena request for “The Drug Buy Female who the Drugs where [sic] sold too [sic]!” In two other requests, July 14 and August 24, 2010, the defendant [ ¡^identified the informant as “The Drug Buy Female SI ‘Donna’ who the Drugs Where [sic] sold too [sic]!”
The defendant contends exceptional circumstances existed because the “identity and appearance of the undercover confidential informant were crucial to the defense of the case.” He argues that the informant could have corroborated Smith’s testimony that the defendant had no knowledge that a drug transaction was going to take place and did not participate in the transaction.
The record shows that the defendant did not file any pretrial motions to obtain the disclosure of the informant’s identity.[4] Nevertheless, the trial court issued the subpoenas as requested by the defendant. Thus, the defendant’s argument that the trial court failed to issue the subpoenas is without merit, particularly in light of the fact that the defendant never requested disclosure of the confidential informant’s identity.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s convictions and sentences.
*173 CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.

. The defendant was also charged with criminal damage to property valued at $500 or more, but less than $50,000. However, that charge was not presented at trial and is not at issue in this appeal.

. Smith was apprehended shortly thereafter.

. The trial court appointed an attorney to assist the defendant during pretrial motions and during the trial.

. As stated above, prior to granting the defendant's request to represent himself, the trial court warned the defendant of the perils of self-representation and informed him that he would be required to follow the same standards as an attorney. The trial court also appointed an attorney to assist the defendant in filing pretrial motions and during the trial.