[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-2581

_____

D.C. No. 3:97-CR-116-03/RV

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/20/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ANTHONY COOK,

Defendant-Appellant.

_____

No. 98-2583

_____

D. C. No. 3:97-CR-116-02/RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADRELL FORTHENBERRY,

Defendant-Appellant.

------------------

Appeals from the United States District Court
for the Northern District of Florida
------------------
**(July 20, 1999)**

Before ANDERSON, Chief Judge, HILL, Senior Circuit Judge, and COOK[*],
Senior District Judge.

COOK, Senior District Judge:

Michael Anthony Cook and Adrell Forthenberry present separate,

unconsolidated appeals from the enhancement of their sentences through

application of the reckless-endangerment-during-flight standard under the

Sentencing Guidelines.  For the reasons that have been set forth below, we vacate

and remand for resentencing.

I.

The criminal proceedings against Cook and Forthenberry resulted from their

participation, along with Levan Irvin, in a robbery of the Gulf Power Employees'

Credit Union in Pensacola, Florida.  The undisputed facts are that Cook and Irvin

entered the Credit Union building and committed the robbery while Forthenberry

waited approximately a block away in the getaway automobile.  Cook and Irvin

---

[*]Honorable Julian Abele Cook, Jr., Senior U.S. District Court Judge for the Eastern
District of Michigan, sitting by designation.

then ran to, and entered, the vehicle and Forthenberry drove away. A Pensacola Police Officer, who had been conducting a surveillance of the Credit Union building at the time of the robbery, saw Cook and Irvin leave the premises and enter the getaway vehicle. Believing that a crime had been committed, he proceeded to follow Cook, Forthenberry and Irvin in an unmarked police vehicle. Shortly thereafter, Forthenberry jumped out of the driver's side door and was immediately apprehended. Irvin then slid into the driver's seat and drove away. Cook exited the car soon thereafter. Irvin, as the sole occupant of the getaway automobile, drove at a high rate of speed until he was arrested after colliding with another police vehicle.

Subsequent to their arrest, Cook and Forthenberry acknowledged their respective culpability for the robbery by pleading guilty. As a result, Cook, having pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a), was placed in custody of the Bureau of Prisons for a period of fifty-one months. Forthenberry received a sixty-four month term of imprisonment after pleading guilty to one count of armed robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and a second count of bank robbery in violation of 18 U.S.C. § 2113(a).

Consistent with the recommendations in each of their Presentence Investigation Reports, the trial judge imposed the sentences upon them after

applying a two-level enhancement for their reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. Cook and Forthenberry contemporaneously objected to the application of these enhancements, each of them contending that they did not directly or actively participate in the high speed chase. In rejecting these arguments, the trial judge determined that, even if they had voluntarily ended their participation in the getaway car prior to the commencement of the high speed chase, the enhancement was still applicable because their disputed conduct was a reasonably foreseeable consequence of the bank robbery.

In their application for appellate review, neither Cook nor Forthenberry challenge the Government's contention that they were active participants in the robbery of the Credit Union. However, it is their joint position that they did not participate in the high speed chase which was attributed to them by the district court. In support of his appeal, Forthenberry asserts that he (1) drove the car from the scene of the bank robbery at a normal rate of speed, (2) immediately stopped his automobile after noticing that an unmarked police car was following him, and (3) was forced out by Irvin who had placed a BB gun to his head. Cook also claims that he had no desire to participate in a high speed chase but was unable to follow Forthenberry's lead and exit the car from the backseat because the vehicle

4

had only two doors.  None of this evidence was controverted during the proceedings below.

II.

The standard of review for improper factual findings is clear error, <u>United States v. Green</u>, 40 F.3d 1167, 1175 (11th Cir. 1994), while the application of the law to those facts by the trial court, such as its interpretation and application of the United States Sentencing Guidelines, is reviewed de novo, <u>see</u> <u>United States v. Carroll</u>, 6 F.3d 735, 743 (11th Cir. 1993); <u>United States v. Burton</u>, 933 F.2d 916, 917 (11th Cir. 1991).

The Sentencing Guideline at issue states that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."  U.S.S.G. § 3C1.2.  On the other hand, Application Note Five to this Sentencing Guideline provides that "[u]nder this section, the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."

5

The dispute in this matter as to whether U.S.S.G. § 3C1.2 was correctly applied to Cook and Forthenberry arises from an apparent conflict between Application Note Five and the relevant conduct provision within the Sentencing Guidelines, U.S.S.G. § 1B1.3, which provides that "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," guideline ranges are to be determined on the basis of: "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(B).

The district court determined that (1) Cook, Forthenberry, and Irvin had participated in a conspiracy to rob the bank, (2) an ensuing high speed chase was a reasonably foreseeable consequence of this conspiracy, and (3) even if Cook and Forthenberry had voluntarily exited the car, this conduct occurred too late for them to have legally disavowed the conspiracy. Hence, the Court concluded that pursuant to U.S.S.G. § 1B1.3(a)(1)(B), they could be held accountable for the high speed chase through the application of U.S.S.G. § 3C1.2.

6

The sentencing court agreed with the Government's argument that an application of the reckless endangerment enhancement was consistent with United States v. Jones, 32 F.3d 1512 (11th Cir. 1994) (per curiam). There, Jones drove a getaway vehicle after the robbery of a credit union, while two accomplices in the robbery rode as passengers. Jones, 32 F.3d at 1514-15. A high speed chase with law enforcement ensued, during which one of the accomplices brandished a weapon at the pursuing officer. Id. at 1515. As in this case, the district court applied the reckless endangerment enhancement against Jones by relying upon the relevant conduct provision and its reasonable foreseeability standard. Id. at 1520. This Circuit affirmed. Id.

Undoubtedly, Jones could be reasonably read as having accepted the propriety of a reasonable foreseeability analysis with respect to the reckless-endangerment guideline, noting that it was reasonably foreseeable that the passenger would have brandished a gun to facilitate escape. Id. However, the Jones tribunal neither addressed whether such an analysis was proper nor questioned its validity. By the same token, the decision in Jones could also be easily read and interpreted as having concluded that it was the high speed chase which created a substantial risk of death or serious bodily injury to others. See id.

However, Jones is distinguishable in an important respect; namely, that the U.S.S.G. § 3C1.2 enhancement was applied to the driver of the getaway vehicle, who had engaged the police in a high speed chase which, in turn, created a substantial risk of grievous harm to others. Id. This Circuit has not directly addressed a situation in which the reckless-endangerment guideline was applied to someone other than the individual who had actually engaged in the endangering conduct, as appears to have been the case here. See United States v. Gonzalez, 71 F.3d 819, 836-37 (11th Cir. 1996) (upholding reckless-endangerment enhancement for defendant driving at high speeds in reverse down residential street); United States v. Bagwell, 30 F.3d 1454, 1456, 1457 n.10 (11th Cir. 1994) (finding no error in reckless-endangerment enhancement for defendant who accelerated truck while driving directly toward police officer and attempted to evade a roadblock); Jones, 32 F.3d at 1520.

Nevertheless, we have intimated that some form of direct or active participation which is consistent with Application Note Five is necessary in order for § 3C1.2 to apply. In United States v. Burton, 933 F.2d 916, 917 (11th Cir. 1991), two males, who had been ordered to stop their automobile on the basis of a tip that they were transporting cocaine, were apprehended when they struck a law enforcement vehicle in an effort to escape. On the appeal by the passenger, the

8

Court noted that "[a]lthough [the defendant] was not driving the vehicle, there appears to be some indication in the record before us that [he] may have urged or directed the driver to take evasive action. If such action could be considered upon rehearing to have been reckless, an enhancement may be appropriate." Burton, 933 F.2d at 918 n.1. Our reliance upon the possibility that the passenger may have actively participated in the endangering conduct in a manner which is consistent with Application Note Five, rather than on his mere participation in criminal conduct that might foreseeably have resulted in an escape attempt that included endangering conduct, lends support to the Appellants' positions in the current appeal.

Every other circuit, which has addressed the applicability of imposing this standard upon someone other than the person who was directly engaged in the reckless activity, has required more than evidence of an endangering conduct that was reasonably foreseeable. Rather, they have demanded the presence of some form of active participation by the accused within the meaning of the conduct listed in Application Note Five. See United States v. Conley, 131 F.3d 1387, 1390-91 (10th Cir. 1997) (enhancement may not be based on reasonable foreseeability alone, but may be based on conduct before, during, or after high speed chase, such as procuring or encouraging reckless behavior); United States v.

9

Lipsey, 62 F.3d 1134, 1136-37 (9th Cir. 1995) (rejecting § 3C1.2 enhancement where district court relied solely on reasonable foreseeability of high speed getaway by defendant-passenger who participated in armed bank robbery with co-defendant-driver); see also United States v. Hall, 71 F.3d 569, 571-72 (6th Cir. 1995) ("reasonable foreseeability" may be insufficient for § 3C1.2 enhancement when defendant was under control of co-defendant who drove getaway vehicle).

Unlike Jones, we are now squarely faced with the issue of whether the application of a reasonable foreseeability analysis under § 1B1.3(a)(1)(B) is appropriate when considering whether the reckless-endangerment-during-flight enhancement standard under § 3C1.2 should be applied. It is our conclusion that the approach of our sister circuits should be adopted because it, rather than that used by the district court, is more consistent with the plain language of the Sentencing Guidelines. The approach of the district court of correlating § 1B1.3(a)(1)(B) with § 3C1.2 appears to have violated the Sentencing Guidelines, which direct that the adjustments in Chapter Three, such as § 3C1.2, are to be consistent with § 1B1.3(a)(1)(B) "*[u]nless otherwise specified*." U.S.S.G. § 1B1.3(a) (emphasis added). Application Note Five to § 3C1.2 qualifies as an instance in which the Sentencing Guidelines have specified that § 1B1.3(a)(1)(B) does not apply. Application Note Five expressly states that, under § 3C1.2, a

defendant is responsible for (1) his own conduct, and (2) the conduct of others, but only if he "aided or abetted, counseled, commanded, induced, procured, or willfully caused" it. By limiting the responsibility for another's actions to those instances when the defendant "aided or abetted, counseled, commanded, induced, procured, or willfully caused" that person's conduct, Application Note Five establishes an exception to the general rule in § 1B1.3(a)(1)(B). Thus, Application Note Five to § 3C1.2 constitutes an instance in which the Guidelines have specified that § 1B1.3(a)(1)(B) is not to apply.[1]

This reading is not only justified by the plain language of the Sentencing Guidelines but also by the realization that the approach by the district court renders Application Note Five a nullity. Under the reasoning by the court below, the reckless-endangerment-during-flight enhancement standard could apply to Cook and Forthenberry without regard to whether they entered the getaway vehicle or

---

[1]The Government points out that Illustration (b)(1) to § 1B1.3 is similar to the facts in this case and supports its position. Illustration (b)(1) provides:

> Defendant C is the getaway driver in an armed bank robbery in which $15,000 is taken and a teller is assaulted and injured. . . . Defendant C is accountable for the injury to the teller under subsection (a)(1)(B) because the assault on the teller was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

However, this Illustration is not instructive, in that it does not address the enhancements based on flight, as does § 3C1.2. Thus, it does not speak to the issue in question; namely whether Application Note Five is an instance in which the Guidelines have "otherwise specified" that § 1B1.3 does not apply.

made any attempt to flee from police.[2]  This rationale would transform U.S.S.G. § 3C1.2 from a factually-specific enhancement to a standard that would become universally applicable to virtually everyone whose co-conspirators fled from law enforcement immediately following the commission of a crime, resulting in a substantial risk of death or serious bodily injury to another person.

## III.

Consequently, the sentences imposed upon Cook and Forthenberry are VACATED and their cases are REMANDED for a resentencing.  The trial judge is instructed to assess whether, by a preponderance of the evidence, the Government can establish that either or both of them directly engaged in, or actively "aided or abetted, counseled, commanded, induced, procured, or willfully caused" another to engage in, conduct that satisfies the recklessness standard in § 3C1.2.  See United States v. Matthews, 168 F.3d 1234, 1247 (11th Cir. 1999).  Further, in order to apply § 3C1.2 to either Appellant, the district court "must make a specific finding, based on the record before it, that the defendant actively caused or procured the reckless behavior at issue."  Conley, 131 F.3d at 1390.

---

[2]This assumes that the failure to get into the vehicle or flee from police would be legally insufficient to constitute a withdrawal from the conspiracy, which would appear to be the only basis for avoiding an application of the relevant conduct provision under the analysis of the sentencing court.

12

Chief Judge Anderson concurs specially.

ANDERSON, Chief Judge, concurring specially:

I concur in the result only. Because the district court was clearly erroneous in finding that the high speed chase was reasonably foreseeable, it is not necessary to address the difficult question of law which the majority resolves.

In this case, the government conceded at oral argument that both defendants got out of the car as soon as there was any forewarning of a high speed chase. Thus, any inference that a high speed chase was reasonably foreseeable was removed by the evidence in this case.