[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10255

_____

D.C. Docket No. 1:12-cr-00183-TWT-JSA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HERBERT CLIFTON HECTOR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 6, 2015)

Before TJOFLAT, WILLIAM PRYOR, and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

As stated in the instant Judgment In A Criminal Case, Herbert Clifton Hector was convicted of "[c]onspiracy to commit armed bank robbery", in violation of 18 U.S.C. § 371 (count 1); "[a]rmed bank robbery", in violation of 18 U.S.C. § 2113(a), (d) (count 2); and "[b]randishing a firearm during a crime of violence (bank robbery)", in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count 3). Hector primarily challenges the instructions given the jury for counts 2 and 3, claiming the court erred by failing to instruct the jury adequately on "advance knowledge", as required by *Rosemond v. United States*, 134 S. Ct. 1240, 1249 (2014). AFFIRMED.

I.

On 15 May 2012, Hector and his co-conspirator, Jackson, robbed a Wells Fargo bank at gunpoint. The two arrived at the bank together in the same vehicle. Video-surveillance evidence shows Hector holding the bank's door open for Jackson, who entered the bank with his handgun drawn. Both men were wearing masks. After each man demanded money from the bank's tellers, they put approximately $12,000 into a bag carried by Hector, while Jackson pointed the weapon at one of the tellers. The video reflects an obviously well-planned and -coordinated robbery; it lasted only approximately 40 seconds. Both men then escaped in the vehicle in which they had arrived at the bank; it was driven by Jackson, with Hector in the front passenger seat.

The police were alerted to the getaway vehicle's location by a GPS tracking device embedded with the money in the bag Hector carried. Police pursued that vehicle, with speeds reaching 99.5 miles per hour. While exiting the highway, the vehicle collided with another vehicle.

After the collision, Jackson and Hector exited the vehicle and both ran towards a QuikTrip filling station just off the exit ramp. They then ran in different directions. Jackson fled to a nearby hotel, where police found him, in possession of a handgun. Hector ran in the opposite direction, through a large drainage tunnel that passed under a highway. He then ran through a warehouse, in which an employee was working. Hector was apprehended in a smaller drainage tunnel on the other side of that warehouse.

In June 2012, Jackson and Hector were indicted for: committing, and aiding and abetting the commission of, armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d); and using, and aiding and abetting the use of, a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). After Jackson pleaded guilty to both counts, a May 2013 superseding indictment charged Hector with: conspiracy to commit bank robbery by use of a handgun, in violation of 18 U.S.C. §§ 2113(a), (d) and 2 (count 1); committing, or aiding and abetting, bank robbery by use of a handgun, in violation of 18 U.S.C. §§ 2113(a), (d) and 2 (count

3

2); and committing, or aiding and abetting, the knowing use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (count 3).  Count 1 provided a number of overt acts, including brandishing a handgun.  Counts 2 and 3 incorporated those overt acts by reference.

At trial, the Government presented the video recording that captured the robbery, including Jackson's brandishing the handgun.  And, the Government presented witnesses who testified to Hector's and Jackson's coordinated actions during the robbery.  It, however, did not present direct evidence of events before the robbery began.

After the Government rested, Hector moved unsuccessfully for judgment of acquittal on count 3.  In other words, he did not seek that relief for counts 1 and 2.  Subsequently, Hector did not present evidence.

At the charge conference, the Government proposed instructing the jury on, *inter alia*, aiding and abetting (defendant aids and abets a person if he intentionally joins with the person to commit a crime, and is a willful participant and not merely a knowing spectator) and *Pinkerton* (reasonable foreseeability), *see Pinkerton* v. *United States*, 328 U.S. 640 (1946).  On the other hand, for aiding and abetting, Hector requested the court to instruct that, to convict for either armed bank robbery (count 2) or aiding and abetting the carrying of a firearm in relation to a crime of

4

violence (count 3), the jury must find Hector had actual knowledge that Jackson would use a firearm in the commission of the robbery. Hector also requested the court instruct: that, to convict under *Pinkerton*, the jury must find the use of the firearm was "reasonably foreseeable . . . as a necessary or natural consequence of the unlawful agreement", which is more specific than the eleventh circuit pattern jury instructions; and on the lesser-included offense of unarmed bank robbery. The court denied Hector's requests and gave the eleventh circuit pattern jury instructions, to which Hector objected.

At the Government's request, and over Hector's objection, the court amended the jury verdict form to include a special interrogatory, asking whether a firearm was "brandished" during the robbery. Hector objected unsuccessfully to that amendment, claiming it constituted a constructive amendment to the indictment.

After instructing the jury on conspiracy, armed bank robbery, and carrying a firearm in relation to a crime of violence, the district court explained aiding-and-abetting liability to the jury:

> A Defendant aids and abets a person if the Defendant intentionally joins with the person to commit a crime. A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also responsible if the Defendant willfully directs or authorizes the acts of an agent, employee or other associate. But finding that a Defendant is criminally responsible for the acts of another person

5

> requires proof that the Defendant intentionally associated with or participated in the crime, not just that the Defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

Hector unsuccessfully renewed his objection to the aiding-and-abetting instruction, based on its lacking a knowledge component.

During its deliberations, the jury asked the judge whether Hector must have been in physical possession of the firearm to be considered "carrying" it.  The judge responded in the negative, explaining, once again, that the jury could convict Hector of carrying and using a firearm in furtherance of a violent crime under either aiding-and-abetting or *Pinkerton* liability.

The jury convicted Hector on all three counts and found a firearm was "brandished" during the course of the robbery.  After sentencing, the court entered the earlier-described judgment for conspiracy to commit armed bank robbery, armed bank robbery, and brandishing a firearm in the commission of a crime of violence.

At sentencing, the court imposed a two-level enhancement for reckless endangerment during flight, pursuant to Sentencing Guideline § 3C1.2, based on the "overwhelming" evidence that Jackson and Hector acted in concert and aided and abetted each other throughout the robbery, and its finding they "acted in concert when they left the bank in the getaway car that had been provided by Mr.

6

Hector" and "by each fleeing after the vehicle crashed".  (The court, however, noted it did not find Hector's flight on foot "in and of itself [was] sufficient to apply the reckless endangerment enhancement, but the fact that he did flee is relevant to . . . whether he was acting in concert with Mr. Jackson during the attempt to flee in the automobile".)  Hector unsuccessfully objected to the application of the enhancement on the grounds he was not driving the getaway vehicle.

Hector's advisory Guidelines sentencing range was 155 to 171 months' imprisonment.  The court imposed a 163-month sentence, comprised of concurrent terms of 60 months' imprisonment for count 1 and 79 for count 2, with 84 months' for count 3 to be served consecutively.  Hector objected to the court's application of the reckless-endangerment enhancement, as well as to the substantive reasonableness of the sentence, claiming it was greater than necessary under the 18 U.S.C. § 3553(a) sentencing factors.

## II.

Hector does not contest his conviction for conspiracy to commit armed bank robbery (count 1).  He challenges:  the aiding-and-abetting and *Pinkerton* instructions; the court's refusing a lesser-included-offense instruction for *unarmed* bank robbery; its including the question on the jury verdict form regarding

"brandishing" as to count 3; the sufficiency of the evidence for counts 2 and 3; and the procedural and substantive reasonableness of his sentence.

A.

1.

In challenging his proposed aiding-and-abetting instructions' being refused, Hector contends his convictions on counts 2 and 3 should be vacated because the court failed to instruct the jury that it must find Hector had "advance knowledge" that a weapon would be used, as required by *Rosemond*, 134 S. Ct. at 1249. (*Rosemond* applies in this instance because it was decided while this appeal was pending. *See Griffith v. Kentucky*, 479 U.S. 314, 322 (1987) ("[F]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication".).) Alternatively, he contends the court erred in failing to include in its aiding-and-abetting instructions language requiring the jury to find he had "actual knowledge", "to a practical certainty", that Jackson would use the firearm. "[T]he legal correctness of a jury instruction [is reviewed] *de novo*". *United States v. Wilk*, 572 F.3d 1229, 1236–37 (11th Cir. 2009); *see also United States v. Felt*, 579 F.3d 1341, 1342 (11th Cir. 2009).

As noted, Hector does not challenge his conviction on count 1 for conspiracy to commit armed bank robbery. For the predicate offense (count 2), a person commits armed bank robbery by "assault[ing] any person, or put[ting] in jeopardy

8

the life of any person by the use of a dangerous weapon or device" while committing or attempting to commit bank robbery. 18 U.S.C. § 2113(d). Along that line, bank robbery occurs when, "by force and violence, or by intimidation, [a defendant] takes, or attempts to take, from the person or presence of another . . . money or any other thing of value belonging to" a bank, or by entering a bank with the intent to do the aforementioned. 18 U.S.C. § 2113(a). Because *armed* bank robbery subjects Hector to an enhanced maximum imprisonment, *compare* § 2113(a) with (d), his charged use of the firearm to commit the bank robbery is a separate element which must be submitted to the jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). For count 3, § 924(c) criminalizes using or carrying a firearm "in relation to any crime of violence . . . ". 18 U.S.C. § 924(c)(1)(A). Therefore, for each offense charged in counts 2 and 3, the Government was required to prove the commission of the bank robbery, as well as use of the firearm in connection with that offense. *See Rosemond*, 134 S. Ct. at 1247.

The Government concedes Hector did not carry a firearm, but contends he aided and abetted Jackson, who did carry one. "[A] person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission". *Rosemond*, 134 S. Ct. at 1245.

9

a.

Regarding the claimed error for not instructing on "advance knowledge", the Court, in *Rosemond*, considered the adequacy of aiding-and-abetting instructions in the context of a § 924(c) offense. It held the intent element of aiding and abetting is satisfied "when [the defendant] knows that one of his confederates will carry a gun", which requires "advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice" whether to participate in the offense. *Id.* at 1249.

For Hector's trial, as quoted *supra*, the jury was instructed that "[a] Defendant aids and abets a person if the Defendant intentionally joins with the person to commit a crime. . . . In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator". But, because the instructions did not state that Hector must have had "advance knowledge" that Jackson would use a firearm during the robbery, and instead explained aiding and abetting as "intentionally joining to commit the crime" and being a "willful participant", the court erred.

On the other hand, jury-instruction errors are subject to harmless-error review. *E.g., United States v. Webb*, 655 F.3d 1238, 1249 n.8 (11th Cir. 2011). "An error is harmless if the reviewing court is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United*

10

*States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012) (citation and internal quotation marks omitted).  The court may consider *sua sponte* the issue of harmless error, *see, e.g., United States v. Adams*, 1 F.3d 1566, 1575–76 (11th Cir. 1993); and the Government bears the burden of showing the error was harmless beyond a reasonable doubt,  *e.g., United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007).  In that regard, and prior to oral argument here, our court directed the parties to be prepared to discuss whether any error under *Rosemond* was harmless in the light of Hector's unchallenged conviction for conspiracy to commit armed bank robbery.

As noted, judgment was entered against Hector for conspiracy to commit armed bank robbery; and, as also noted, he does *not* challenge that conviction.  For that conviction, however, the court did not instruct the jury on conspiracy to commit armed bank robbery, instead describing count 1 as conspiracy to commit bank robbery ("Count 1 charges that the Defendant knowingly and willfully conspired to commit bank robbery"), and only explaining conspiracy in general terms.  Similarly, for count 1, the jury verdict form listed "Conspiracy to Commit Bank Robbery".

Nevertheless, the superseding indictment in count 1 charged Hector with conspiracy to commit armed bank robbery, and listed eight overt acts, some of which involved the use of a firearm.  Further, the jury had the indictment during its

11

deliberations.  And, the judgment against Hector stated:  "The defendant was found guilty by jury on Count(s) 1, 2, 3 of the Superseding Indictment" and then described count 1 as "Conspiracy to commit armed bank robbery".

In district court, Hector neither objected to the conspiracy instruction or jury verdict form for count 1, nor challenged the conviction due to either error. Moreover, on appeal, Hector does not challenge that erroneous instruction on count 1, instead simply noting the erroneous description for the first time in a footnote in his reply brief.  Therefore, for considering harmless error *vel non*, we take into consideration Hector's conviction for conspiracy to commit *armed* bank robbery.

In this instance, to find the error in the instruction on count 2 did not contribute to the verdict, the finding of guilt for conspiracy to commit armed bank robbery must necessarily equate to finding "advance knowledge".  To prove conspiracy, the Government "must prove (1) the existence of an agreement to achieve an unlawful objective . . . ; (2) the defendant['s] knowing and voluntary participation in the conspiracy; and (3) an overt act in furtherance of the conspiracy".  *United States v. McNair*, 605 F.3d 1152, 1195 (11th Cir. 2010) (alterations, citation, and internal quotation marks omitted).  And as noted *supra*, one of the necessary elements of armed bank robbery is the use of a "dangerous weapon".  18 U.S.C. § 2113(d).  Because the only firearm at issue was the firearm Jackson carried, by finding against Hector, the jury necessarily determined Hector

12

conspired to use a firearm to rob the bank.  Accordingly, it is beyond a reasonable doubt that the erroneous, pre-*Rosemond* aiding-and-abetting instruction did not contribute to the verdict obtained.  *See United States v. Whitfield*, 695 F.3d 288, 304 (4th Cir. 2012) ("[A]n instructional error is harmless in circumstances where the jury actually made an equivalent or identical finding pursuant to another instruction".  (internal quotation marks omitted)).

### b.

Hector's alternative claim regarding "actual knowledge" is without merit.  Although the legal correctness of an instruction is reviewed *de novo*, questions of phrasing are reviewed for abuse of discretion.  *Wilk*, 572 F.3d at 1236–37.

Hector's proposed "actual knowledge" language conflicts with *Rosemond* and the above-explained analysis.  Further, his contention that *United States v. Hamblin*, 911 F.2d 551, 558 (11th Cir. 1990), requires the court to explain that such knowledge must be known "to a practical certainty" is unsupported by this court's precedent.  Instructions need only be substantively correct and substantially cover the governing law, *United States v. Gonzalez*, 975 F.2d 1514, 1516 (11th Cir. 1992); the instructions here did just that.

### 2.

Hector next contends the court abused its discretion when it refused to adopt Hector's proposed *Pinkerton*-liability instruction.  Again, questions of phrasing are

reviewed for abuse of discretion. *Wilk*, 572 F.3d at 1237. Along that line, "district courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts". *Id.* (internal quotation marks omitted). "A trial court abuses its discretion in denying a requested jury instruction when (1) the instruction is substantively correct; (2) it was not substantially covered in the charge actually delivered to the jury; and (3) the failure to give it seriously impaired the defendant's ability to present an effective defense." *Gonzalez*, 975 F.2d at 1516 (internal quotation marks omitted).

As discussed, the court used the eleventh circuit pattern jury instructions, which instruct that a jury may convict when it finds, *inter alia*, that "it was reasonably foreseeable that a coconspirator would commit the crime as a consequence of the conspiracy". *Eleventh Circuit Pattern Jury Instructions* (Criminal Cases) § 13.5 (2010). Hector requested an instruction limiting *Pinkerton* liability only to those consequences that were "reasonably foreseeable . . . as a necessary or natural consequence of the agreement". The distinction between the two phrases is negligible; the pattern instruction was substantively correct, covered "substantially" the same ground as Hector's requested instruction, and did not impair his defense.

3.

For count 2 (armed bank robbery), Hector challenges the court's refusing to instruct the jury on the lesser-included offense of *unarmed* bank robbery.  He contends that, because it is disputed whether he had "advance knowledge" that a firearm would be used in the robbery, a rational jury could have convicted him of the lesser offense:  unarmed bank robbery.  *See* 18 U.S.C. § 2113(a).  As noted, a district court's refusal to give a jury instruction is reviewed for an abuse of discretion.  *E.g., United States v. Yeager*, 331 F.3d 1216, 1222 (11th Cir. 2003).

When a lesser-included-offense instruction is refused, "[a]n abuse of discretion may occur where the evidence would permit a rational jury to find the defendant guilty of the lesser offense and not the greater".  *United States v. Gutierrez*, 745 F.3d 463, 470 (11th Cir. 2014) (internal quotation marks omitted); *see also Keeble v. United States*, 412 U.S. 205, 208 (1973) ("[I]t is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater".).  The only evidence of Hector's "advance knowledge" of the firearm was an inference based on Hector's and Jackson's coordination during the robbery. And, although a jury could "permissibly infer" from Hector's continued participation in the robbery (including the video evidence of Hector's opening the door to the bank for Jackson, who was displaying a

15

firearm) that Hector had "advance knowledge" that a weapon would be used, *Rosemond*, 134 S. Ct. at 1250 n.9, the jury was not required to make that inference.

Accordingly, because Hector did not carry the firearm, and the Government presented no evidence regarding the events prior to Hector's and Jackson's entering the bank, a rational jury could have found Hector guilty of unarmed, as opposed to armed, bank robbery. *See, e.g.*, *United States v. Nelson*, 574 F.2d 277, 282 (5th Cir. 1978). The district court, therefore, abused its discretion by refusing to instruct on unarmed bank robbery.

This error, however, is also harmless. As discussed, Hector's conviction for conspiracy to commit armed bank robbery represents an unchallenged finding that Hector had "advance knowledge" that Jackson would use a firearm. That conviction and the undisputed evidence of the robbery prove, beyond a reasonable doubt, that Hector committed armed bank robbery.

### B.

Hector maintains that, by including the "brandishing" question on the jury verdict form, the court improperly constructively amended the indictment to include a broader basis for finding him guilty, in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013) (holding that, "because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury").

16

Whether a court constructively amended an indictment is reviewed *de novo*. *E.g., United States v. Sanders*, 668 F.3d 1298, 1309 n.9 (11th Cir. 2012).

A "district court may not broaden the charges by constructive amendment". *Id.* at 1309. "A constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the . . . indictment." *Id.* (citation and internal quotation marks omitted).

The court's including the "brandishing" question on the verdict form did not constructively amend the indictment because count 3 incorporated by reference the overt acts alleged in count 1 (the conspiracy count), which included the allegation that Hector and Jackson "brandished a handgun". *See* Fed. R. Crim. P. 7(c)(1) ("A count may incorporate by reference an allegation made in another count."). Furthermore, whether Hector "brandished" a weapon was a jury issue. *See Alleyne*, 133 S.Ct. at 2160.

## C.

Consistent with some of the earlier-discussed challenges to the jury instructions, Hector challenges the sufficiency of the evidence to prove he committed armed bank robbery (count 2) and carried or used a firearm in furtherance of that offense (count 3) under aiding-and-abetting or *Pinkerton* liability theories. He claims: because the Government presented no direct

17

evidence that Hector had "advance knowledge" Jackson would use a firearm, there is insufficient evidence to prove he aided and abetted Jackson in the armed bank robbery (count 2) or in carrying a firearm (count 3); and, concerning *Pinkerton*, such actions were also not reasonably foreseeable.

A defendant fails to preserve his sufficiency-of-the-evidence challenge by not moving at the close of the evidence for judgment of acquittal under Federal Rule of Criminal Procedure 29.  *See, e.g., United States v. Joseph*, 709 F.3d 1082, 1103 (11th Cir. 2013).  Therefore, as in this instance for count 3, although sufficiency of the evidence is normally reviewed *de novo*, where the defendant fails to preserve the claim, as in this instance for count 2, it is reviewed only for plain error.  *Id.*  Accordingly, because, unlike for count 3, Hector failed to move for judgment of acquittal for count 2, the standard of review governing his sufficiency challenge is bifurcated:  the sufficiency of the evidence for count 3 is reviewed *de novo*; but, for count 2, only for plain error.  In short, for count 2, Hector has a greater burden under plain-error review.

For our *de novo* review for count 3, "[a] factual finding will be sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt".  *United States v. Hunt,* 526 F.3d 739, 745 (11th Cir. 2008) (emphasis in original) (citation and internal quotation marks omitted).

18

Even though the Government presented no evidence regarding events prior to Hector's and Jackson's entering the bank, the evidence was sufficient to convict Hector, because the jury could have determined the use of a firearm in the robbery was a "reasonably foreseeable" consequence under *Pinkerton*. Likewise, for aiding and abetting, the jury could also have permissibly inferred Hector's "advance knowledge" of the firearm from Hector's continued participation in the crime, including after opening the bank door for Jackson while he was displaying a firearm, *Rosemond*, 134 S. Ct. at 1250 n.9 ("Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission.").

Similarly, under plain-error review, the sufficiency challenge to count 2 fails.

## D.

Finally, in contesting the procedural and substantive reasonableness of his sentence, Hector claims: his sentence is procedurally unreasonable because the court erred when it imposed the two-level enhancement to his offense level for reckless endangerment during flight, Guideline § 3C1.2; and it is substantively

19

unreasonable because he received a longer term of imprisonment for his § 924(c) offense (count 3) than Jackson.

1.

The district court's interpretation and application of the Guidelines are reviewed *de novo*; the underlying factual findings, for clear error. *United States v. Tampas*, 493 F.3d 1291, 1303 (11th Cir. 2007). This standard applies to the reckless-endangerment enhancement. *E.g., United States v. Leon*, 310 F. App'x 343, 344 (11th Cir. 2009) (per curiam) ("We review *de novo* the application of the reckless endangerment enhancement to a sentence and review findings of fact related to that enhancement for clear error."). "For a finding to be clearly erroneous, [the court] must be left with a definite and firm conviction that a mistake has been committed". *United States v. Barsoum*, 763 F.3d 1321, 1333 (11th Cir. 2014) (citation and internal quotation marks omitted).

a.

Hector contends the enhancement is inapplicable because he was the passenger in the getaway vehicle and the Government presented no evidence showing he aided and abetted in the recklessness of the getaway. Guideline § 3C1.2 states: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase [the offense level] by 2 levels". Under that

20

Guideline, a "defendant cannot be held responsible for another's conduct . . . without some form of direct or active participation. Mere foreseeability of the conduct is insufficient". *United States v. Dougherty*, 754 F.3d 1353, 1360 (11th Cir. 2014) (citation omitted).

In *United States v. Johnson*, this court vacated the application of the reckless-endangerment enhancement to a passenger in a getaway vehicle when the application was based on only three pieces of circumstantial evidence: the planned nature of the crime; defendant's supposed awareness of the police at the scene of the crime when he chose to get into the getaway vehicle (which was disputed); and his flight on foot after the driver crashed the vehicle. 694 F.3d 1192, 1196–99 (11th Cir. 2012). After noting that *United States v. Cook*, 181 F.3d 1232, 1236 (11th Cir. 1999), requires the district court to "make a specific finding, based on the record before it, that the defendant actively caused or procured the reckless behavior at issue", the *Johnson* court determined each of these three facts did not support the application of the enhancement, and remanded the issue to district court. 694 F.3d at 1196–99. (Contrary to the dissent's characterization of *Johnson*, Dissent at 29, this court did not remand only for resentencing. *See Johnson*, 694 F.3d at 1198–99. Rather, it remanded for the court to "reopen the record" to resolve "whether the district court [could] make the specific finding required by *Cook*", *id.* at 1199, as the dissent notes at 31.)

21

As he did at sentencing, Hector relies on *Johnson* for support, claiming:  the evidence does not support finding he aided and abetted the getaway; and, even if it does, the court's finding at sentencing that "[Hector and Jackson] together planned the robbery" is "insufficient to justify the application of the enhancement" as a matter of fact and law.  Although Hector is correct in claiming a finding of general involvement in the crime is insufficient to justify the enhancement's application, his assertion does not fairly characterize the facts at hand.

In addition to helping plan and coordinate the quickly-executed bank robbery (as stated, it lasted only 40 seconds), Hector's and Jackson's separate flight in opposite directions supports finding that the getaway was coordinated. Further, as adopted by the court at sentencing, the presentence investigation report states Hector supplied the vehicle used in the robbery and getaway (it belonged to his fiancée's mother).

Last, and most importantly, *Johnson* requires a court make a specific finding of aiding and abetting prior to imposing the enhancement.  *Id.* at 1198 ("On the present record, we cannot conclude that the district court made the specific finding required by *Cook*. Although the evidence may be sufficient to support an inference that Johnson knew when he entered the getaway car that the police were on the scene blocking the exits and that Johnson knew that Pugh would have to ram a police car to escape (or engage in other endangering conduct to escape), . . . the

22

district court made no specific finding to that effect. This failure is inconsistent with *Cook*, and therefore Johnson's sentence must be vacated."). In requiring the court to make that finding, *Johnson* allows inferring Hector's aiding and abetting in the recklessness of the flight based on circumstantial evidence. *See id.* In this instance, and unlike in *Johnson*, the court, after considering, in the light of *Johnson*, the evidence presented both at trial and sentencing, made a specific finding that Hector and Jackson had "acted in concert by each fleeing after the vehicle crashed" and that "there's simply no reason whatsoever to suspect that they were not acting in concert with each other in aiding and abetting each other in the course of the car chase". Based on such evidence, this factual finding was not clearly erroneous, and the district court did not err in its application of *Johnson* and the enhancement.

The dissent maintains *Johnson* prohibits applying the reckless-endangerment enhancement based solely on evidence of coordination of the crime, and that the differences between the facts in *Johnson* and here are immaterial. Dissent at 28-31. But, as explained above, *Johnson* allows the district court to permissibly infer aiding and abetting based on circumstantial evidence, and Hector's supplying the vehicle and his and Jackson's "act[ing] in concert" in fleeing on foot support such an inference. Further, the error combatted in *Johnson*—the district court's failure

23

to make a specific finding—is not present here; as discussed, the court made the required finding in this instance.

b.

In the alternative, the recklessness of Hector's flight on foot justifies the application of the enhancement. *See, e.g., United States v. Lee*, 391 F. App'x 831, 835 (11th Cir. 2010) ("Even if the district court failed to make such findings, however, we may still affirm if the record clearly reflects the basis for the enhancement and supports it." (internal quotation marks omitted)). This aspect of the record shows the enhancement was applied correctly.

The Government did not raise this flight-on-foot contention in its brief to this court. Although this failure to raise the issue in its brief normally constitutes waiver, it is within the court's discretion to consider the issue where "the proper resolution is beyond any doubt". *United States v. Godoy*, 821 F.2d 1498, 1504 (11th Cir. 1987) (internal quotation marks omitted). The Government advanced this issue at sentencing and to this court at oral argument, and the underlying facts were discussed in both parties' briefs here. Therefore, we exercise our discretion to consider this issue. (The dissent asserts this court "cannot decide this issue where the district court made no findings of fact, the [G]overnment failed to raise the issue in its brief, and the only relevant statement of the district court suggests that Hector's flight on foot was insufficient to apply the enhancement". Dissent at

24

32. For the above, and following, reasons, this alternative basis can be reached and permits the enhancement.)

As stated, the record shows Hector's separate flight on foot justifies the application of the enhancement. He fled from the scene of the accident, into a dark and slippery drainage tunnel which ran under a highway. One officer pursuing Hector testified that the tunnel was "pitch dark" and that he feared falling into one of the reservoirs inside the tunnel, which were "basins that go straight down and drop for 10 or 15 feet". Additionally, he testified that he and his partner were forced to pursue Hector with their weapons drawn, suspecting he was armed. This pursuit included Hector's running through the occupied warehouse. Under the circumstances, he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" by leading officers on a dangerous foot chase. *See* U.S.S.G. § 3C1.2.

2.

The substantive reasonableness of a sentence is reviewed for abuse of discretion. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). Hector contends the court abused its discretion by imposing a greater sentence on him than on Jackson. This court can vacate the sentence "if . . . we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies

25

outside the range of reasonable sentences dictated by the facts of the case". *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (citation and internal quotation marks omitted).

Hector primarily asserts it is unreasonable that he received a greater sentence than Jackson when Hector did not wield the firearm, and Jackson did. Although avoiding unnecessary sentencing disparities is "particularly important", this § 3553(a) sentencing factor only applies to similarly-situated defendants. *See id.* at 1219.

At sentencing, the Government asked the court to sentence Hector to 163 months' imprisonment, "which [is in] the middle of the [advisory] range", based, in part, on this being Hector's second armed bank robbery. Hector requested a low-end sentence of 155 months based on: his holding two jobs and attending school at the time of the robbery; and his being raised from a young age to sell drugs. The court sentenced Hector to 163 months' imprisonment after finding "no mitigating factors that are not taken into consideration in the calculation of the [G]uideline range".

Hector's disparity-of-sentence claim is thus without merit. He and Jackson are not similarly situated based on differences in: their criminal histories; and their level or cooperation. *E.g., United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009).

III.

For the foregoing reasons, the judgment is AFFIRMED.

WILLIAM PRYOR, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that we must affirm Hector's convictions, but I write separately because I cannot join the majority's opinion with respect to the imposition of the sentencing enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2. Our prior decision in *United States v. Johnson* controls this question, 694 F.3d 1192, 1196 (11th Cir. 2012), and we are bound by that decision whether we believe it a wise one or not. There is no material difference between Hector's flight and the flight of the defendant in *Johnson*. Moreover, the majority's alternative rationale—that Hector's flight on foot was sufficient to apply the enhancement—is unsupported by any factual finding by the district court. Accordingly, I respectfully dissent from the decision to affirm Hector's sentence.

Section 3C1.2 states that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase [the offense level] by 2 levels." *Id*. But under section 3C1.2, a "defendant cannot be held responsible for another's conduct . . . without some form of direct or active participation. Mere foreseeability of the conduct is insufficient." *United States v. Dougherty*, 754 F.3d 1353, 1360 (11th Cir. 2014) (citation omitted).

When the government argued at the sentencing hearing that Hector aided and abetted Jackson's high-speed, reckless driving to escape the police, the

government admitted that there was no direct evidence that Hector "aided or abetted or otherwise promoted the driving of the car away from law enforcement." But the district court found that Jackson and Hector must have aided and abetted one another in the course of the car chase because there was overwhelming evidence that Jackson and Hector planned and coordinated the robbery.

Based on our precedent in *Johnson*, the district court erred. *Johnson* ruled that evidence of coordination in a crime "does not relate at all" to a defendant's role in the escape. 694 F.3d at 1196 (internal quotation marks and citation omitted). In *Johnson*, the defendant and a cohort "robbed a CVS pharmacy." *Id.* at 1194. "They were armed, wore latex gloves, and covered their faces with bandanas." *Id*. After police arrived and barricaded the exits from the parking lot, the robbers "emerged from the store and hopped in a stolen 1995 Honda Accord." *Id*. They escaped from the parking lot by ramming one of the police cars, and then led police on a high speed chase, "ignoring all traffic controls." *Id*. The defendant was not the driver. *Id*. After the car crashed, the defendant fled on foot. *Id*. The district court imposed an enhancement under section 3C1.2. *Id*. at 1195. We vacated the sentence and remanded for resentencing. We explained that, even though the "robbery appear[ed] to have been somewhat well planned," that evidence provided "no information on [the defendant]'s contribution to that planning, and even if [it] did, it would not necessarily reveal whether the getaway

29

maneuver was premeditated (and if it was, by whom)." *Id*. Further, the defendant's "flight on foot might reveal that he intended to escape police all along, but it does not tell us whether he played any active supporting role in the recklessness of the car-flight." *Id*. Finally, we explained that, "[a]lthough the evidence may be sufficient to support an inference that [the defendant] knew when he entered the getaway car that the police were on the scene blocking the exits" and "that [his cohort] would have to ram a police car to escape (or engage in other endangering conduct to escape)," the district court made no finding to that effect. *Id*. at 1198.

The majority points to only two facts to distinguish *Johnson* from the instant appeal. First, Hector supplied the vehicle to be used during the robbery. Majority Op. at 22. In *Johnson*, the getaway vehicle was stolen. 694 F.3d at 1194. Second, Hector and Jackson fled on foot in separate directions after the car crashed. Majority Op. at 22. In *Johnson*, the defendant fled on foot, but his cohort was trapped in the car and could not flee. 694 F.3d at 1194.

Neither distinction is material. First, that Hector supplied the vehicle tells us nothing about whether he aided a reckless escape. The use of his car tends to prove that he helped plan the robbery, but *Johnson* ruled that evidence of coordination during the crime "does not relate at all" to Hector's "responsibility for [Jackson's] recklessness during a getaway," *id.* at 1196 (internal quotation marks and citation omitted). Second, the separate flights on foot add nothing to the analysis. Hector

30

and Jackson might have fled in different directions because they had coordinated their escape, or they might have fled in different directions precisely because they had not coordinated their escape. And even if they had coordinated their flight on foot, we still would not know whether Hector planned the escape to be reckless or aided and abetted Jackson's reckless driving.

The majority suggests that the only failure of the district court in *Johnson* was a failure to make a specific finding of fact, Majority Op. at 22-23, but the majority misreads our precedent. In *Johnson*, we remanded for the district court to "consider[] where the police and their cars were situated and what was more likely than not visible to [the defendant] as he exited the store and entered the getaway car" because "[t]he enhancement to [the defendant]'s sentence rests on resolution of this uncertainty." 694 F.3d at 1199. This issue was dispositive because evidence of coordination during the robbery and the defendant's flight on foot was insufficient to support an enhancement under section 3C1.2.

The majority also errs when it decides, in the alternative, that Hector's flight on foot was sufficient to apply the enhancement. The district court did not make findings about Hector's flight on foot or decide whether it was reckless. To the contrary, the district court stated that it did not "think the fact that Mr. Hector then fled on foot in and of itself would be sufficient to apply the reckless endangerment enhancement." We cannot decide this issue when the district court made no

findings of fact, the government failed to raise the issue in its brief, and the only relevant statement of the district court suggests that Hector's flight on foot was insufficient to apply the enhancement. "A misinterpretation of the Guidelines by a district court effectively means that [the district court] has not properly consulted the Guidelines." *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005) (internal quotation marks and citation omitted). We should vacate Hector's sentence and remand for the district court to resentence Hector under the correct understanding of *Johnson*.

I respectfully dissent in part.